No. 14,385.

WILSON v. THE PEOPLE.
(87 P. [2d] 5)

Decided January 23, 1939. Rehearing denied February 14, 1939.

442

Mr. RAYMOND L. SAUTER, Mr. RAYMOND M. SANDHOUSE, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, Mr. WILLIAM B. PAYNTER, of counsel, on petition for rehearing, for the people.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

PLAINTIFF in error was charged and convicted under two counts of having unlawfully and feloniously aided, abetted and assisted one Dwight J. Pierce in the commission of a burglary and larceny. One of his defenses was the absence of felonious intent on his part to commit the crimes in question, because he acted solely as a decoy to detect the commission of the crime and to report it to the proper officers, so that Pierce might be apprehended. Plaintiff in error will hereinafter be referred to as Wilson.

The facts, substantially, are as follows: On the night of February 19, 1938, Wilson, son of the deputy district attorney of the thirteenth judicial district, and employed by him for several months prior thereto, was in Johnson's Cafe in Sterling, Colorado. Some time after 10 o'clock p. m. Pierce entered. Pierce had been drinking

and was looking for a place where he could purchase more liquor. Without previous arrangement, Pierce approached Wilson and prevailed upon him to make an effort to find such a place. The two left the cafe and went to the Commercial Hotel, where Pierce borrowed some money. Wilson left and came back to report to Pierce that no whiskey could be had, but he could get a pint of sloe gin. This was satisfactory to Pierce, and Wilson procured a bottle of the gin which he delivered to Pierce, and both returned to the Johnson Cafe, where they drank some of the liquor. During that time a wrist watch which Wilson had been wearing disappeared while he was in the company of Pierce. When Wilson missed his watch he immediately accused Pierce of taking it. He continued to make the accusation through the evening, and at one time threatened to fight Pierce because of the alleged theft. Pierce denied the theft. The argument about the wrist watch became so noisy that the participants were asked to leave the cafe. They then went to another cafe and Wilson bought Pierce a cup of coffee, and the argument concerning the watch was resumed until Pierce, as he testified, thought they would be thrown out there.

While drinking the liquor at the Johnson Cafe, Pierce first commenced to talk about jobs that he had done and specifically mentioned his burglary of the Wheat Growers Cafe. This talk came up in connection with the disappearance of Wilson's wrist watch. Finally they reached the Commercial Hotel, where Pierce was a janitor, and in the furnace room the conversation about burglaries continued between them. There also was some talk concerning tools, and Pierce procured a piece of paper and wrote down a list of tools that would be needed, not that night, but at some future time, and Wilson said that he could get them for him. The subject of the watch again came up in the furnace room, and Pierce again denied taking it. Wilson suggested that they go to his father's office, to which he had the keys, to start on the jobs, and they there conceived the idea of breaking into

Hecker Brothers' Drugstore. Wilson did not first propose the burglarizing, the idea originating with Pierce, and after the latter had told Wilson that he had burglarized the Wheat Growers Cafe several days before. There is some conflict in the evidence as to who first suggested breaking into Hecker Brothers' Drugstore, but they proceeded to the building in which it was located, tried several doors, finally going outside, and effecting an entry through the front transom. After Wilson had boosted Pierce up so that he could break the glass in the transom, and after looking around to see if anyone had heard them, Wilson again lifted Pierce and the latter handed the broken glass to Wilson, who dropped it on the cement. Thereupon Wilson again lifted Pierce up so that he could crawl through the transom. Pierce then proceeded to the cash register. Immediately after Pierce was inside the store Wilson ran to his father's office and telephoned the police to come to Hecker Brothers' Drugstore. He then returned to where the entry had been effected, and a few moments before the police arrived, Pierce handed to Wilson, through the transom, two or three bottles of liquor which he placed on the cement. Pierce noticed after he entered the store that Wilson had disappeared. Immediately after arrival of the police Wilson told them that Pierce was inside, designating him as "that guy from the Commercial Hotel." The police officer asked him how he knew, and he replied, "I boosted him in." Pierce escaped through the back door and Wilson immediately volunteered to track him down, and did so by going to Pierce's room at the Commercial Hotel, where he identified Pierce as the burglar in the presence of the police authorities. Wilson told the police, shortly after the apprehension of Pierce, that his connection with the burglary was for the purpose of getting even with Pierce for taking his watch, and that that was the only way he hoped to recover it. He also stated later that evening that he wanted to apprehend Pierce and turn him over to the authorities—he wanted to catch him in the act.

The record indicates that Wilson was sincere in his belief that Pierce had taken his watch. Moreover, there is evidence in the people's case that tends to support his defense that he acted only as a decoy to apprehend Pierce in the act of committing the crime. Wilson's testimony at the trial substantially supported his defense that he had no criminal intent to feloniously burglarize or steal.

Plaintiff in error classifies his assignments of error under two headings: 1. That the court erred in giving to the jury Instruction No. 10. 2. That the court erred in not sustaining the defendant's motion for a nonsuit at the conclusion of the people's testimony, and that it again erred in not directing a verdict of not guilty at the conclusion of all of the evidence.

Taking up first the second ground of error, we are of the opinion that the evidence was sufficient to warrant the trial court's submission of the case to the jury. The motions for nonsuit, and for a directed verdict of not guilty, were properly denied.

Instruction No. 10, to the giving of which defendant assigns error, reads as follows: "One may not participate in the commission of a felony and then obtain immunity from punishment on the ground that he was a mere detective or spy. One who attempts to detect the commission of crime in others must himself stop short of lending assistance, or participation in the commission of the crime."

Defendant contends that this instruction is erroneous because it left no question of fact for the determination of the jury on his defense of decoy and detection. Wilson did assist Pierce in entering the drugstore. This he never denied and immediately revealed to the police his part in the transaction when they arrived in response to his call. The instruction inferentially placed guilt upon Wilson, because he did not "stop short of lending assistance," but actually gave assistance.

We find the following language in 16 Corpus Juris at page 128, section 115: "For one to be guilty as principal

in the second degree, it is essential that he share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both.'' And on page 129: ''One who participates in a felony as a feigned accomplice, in order to entrap the other, is not criminally liable, and he need not take an officer of the law into his confidence to avoid an imputation of criminal intent.''

In *Price v. People*, 109 Ill. 109, the Supreme Court of the state of Illinois had before it an issue similar to the one here presented. There Price, with two others, was convicted of the crime of burglary. It appears the defendant in that case accompanying two others went to Milroy's house for the purpose of robbing him. He, with the others, entered the house where the holdup was committed, carried a gun, which he displayed, but which was not loaded, and did assist to a far greater extent than did Wilson in the instant case. Because of an interruption, the crime of robbery was not carried to a successful conclusion. Price testified that on the previous day he had talked to a constable about the matter and to an ex-sheriff. The evidence whether or not he did so was conflicting. Price insisted that his object in accompanying the other two was to expose the contemplated crime and to bring the real perpetrators to justice. We quote from the language of the court (pp. 115-116): ''Waiving all controverted questions, the undisputed facts, as appears from the foregoing, are, that the accused, on the day of the attempted robbery, went deliberately to a constable of the town in which he lived and told him all about the contemplated crime, giving the true names of the parties, and telling him when and where it was to take place, and the name of the intended victim; that the attempt was made at the very time and place, and by the parties, stated by him, and that on the following morning he, in like manner, went to a justice of the peace and told him all about what had been done, and furnished him with the true names of the parties implicated, by means of which,

on the same day, they were brought to trial, and were subsequently convicted of the crime. That a sane person, really guilty of committing so grave a crime as the one imputed to the accused, would thus act, is so inconsistent with all human experience as not to warrant the conviction of any one under the circumstances shown." The judgment of conviction was reversed.

In the case of *State v. Bigley*, 53 Ida. 636 (26 P. (2d) 375), the defendant, who with others was charged with committing a burglary, made substantially the same defense as did Wilson in the instant case. The assistance rendered by Bigley was to a greater degree than by Wilson here. In reversing the conviction the Supreme Court of Idaho uses the following language at page 640: "The defect in this reasoning is that Bigley can only be held responsible for his intent at the time the crime was committed, that is, the entering into the bank and taking of the money *(State v. Riggs*, 8 Ida. 630, 70 Pac. 947; 36 C. J., p. 771, sec. 127; 17 R. C. L., pp. 25, 36, sec. 28), and the only evidence in the record of his intent at that time was that while he desired the crime to be fully consummated by Coppinger and Lawley, his intention was not that he should be a participant therein with the intent of permanently depriving the bank of the money to be taken." Other authorities sustaining this position are: *People v. Emmons*, 7 Cal. App. 685, 95 Pac. 1032; *Commonwealth v. Earl*, 91 Pa. Super. Ct. 447.

In *Porter v. People*, 31 Colo. 508, 74 Pac. 879, we had before us a defense of entrapment, and the question was whether the entrapper, who testified, should be considered as an accomplice. In the opinion at page 516 we use this language: "Further than this, when it appeared that the witness had been co-operating with the defendant and others in the commission of the crimes charged, it was proper to call the attention of the jury to the difference between such co-operation when real and assumed, so they might understand that in the latter ca-

pacity, if they found such to be the fact, he was not to be regarded as an accomplice."

Counsel for the people contend that the principle involved here has been set at rest by the opinion in *Connor v. People,* 18 Colo. 373, 33 Pac. 159. In that case we sustained the defense of entrapment and reversed the judgment of conviction. In the instant case we have the defense of detection and not entrapment, and any language relating to the defense of Connor is not applicable here.

In this connection we cite also Wharton's Criminal Law (12th ed.), volume 1, section 271, which reads in part as follows: "A detective entering apparently into a criminal conspiracy already formed for the purpose of exploding it is not an accessory before the fact. For it should be remembered that while detectives, when acting as decoys, may apparently provoke the crime, the essential element of *dolus,* or malicious determination to violate the law, is wanting in their case. And it is only the formal, and not the substantive, part of the crime that they provoke. They provoke, for instance, in larceny, the asportation of the goods, but not the ultimate loss by the owner. They may be actuated by the most unworthy of motives, but the *animus furandi* in larceny is not imputable to them; and it is in larcenous cases or cheats that they are chiefly employed."

It may be that the jury in the instant case placed more stress on the motives that actuated Wilson in his participation in the transaction than they did on the necessity of determining his felonious intent under the circumstances.

Reverting to Instruction No. 10, by judicial fiat this instruction makes any assistance in the perpetration of an offense criminal, whether felonious or not. The determination of whether the assistance by Wilson under the evidence in this case was given with felonious intent was solely the province of the jury, and this instruction erroneously invaded that province. There may be offenses and circumstances when any assistance rendered may

make a participant guilty of a criminal offense; but here we are concerned only with the facts, circumstances and defenses in this case. Forfeiture of individual liberty through criminal procedure, by courts, must on our part meet all the demands of impartial justice. The giving of Instruction No. 10 constituted prejudicial error.

The judgment is reversed and the cause remanded for new trial.

MR. JUSTICE BAKKE and MR. JUSTICE BURKE not participating.