STATE OF NORTH CAROLINA v. ANTHONY RAY BLANKENSHIP

No. 341A92

(Filed 9 September 1994)

1. **Constitutional Law § 280 (NCI4th)— first-degree murder— appearance pro se—court's refusal to reappoint counsel**

The trial court in a murder and kidnapping prosecution did not abuse its discretion by denying a pro se defendant's request to reinstate his trial counsel where defendant had initially requested and received appointed counsel, Charles Poole; defendant appeared with Mr. Poole at a pretrial hearing and informed the court that he wished to represent himself; Mr. Poole was appointed as standby counsel; the court continued to urge defendant to reconsider at a subsequent hearing; the trial court questioned defendant about his decision again at the end of the first day of trial; defendant continued to represent himself until after the prosecution had rested and defendant had called two witnesses of his own; defendant then asked the court to allow Mr. Poole to take over the case; and the court refused. Although defendant contended that the court had assured him that appointed counsel would be reinstated upon his request, there is no showing in the record or transcript that defendant relied on anything the court said in choosing to represent himself; the transcript demonstrates that defendant deliberately disregarded the trial court's advice and made this decision in spite of the trial court's advice; and the statements made by the trial court did not constitute a guarantee that the court would reinstate appointed counsel at any time, but were merely an expression of the court's willingness to reinstate Mr. Poole within a reasonable time before defendant's trial began.

**Am Jur 2d, Criminal Law §§ 764 et seq., 993 et seq.**

**Accused's right to represent himself in state criminal proceeding—modern state cases. 98 ALR3d 13.**

2. **Jury § 142 (NCI4th)— first-degree murder—jury selection—question concerning defense decision not to introduce evidence—prohibited**

The trial court did not err in a murder and kidnapping prosecution by prohibiting defendant from asking potential jurors whether they would regard a defense decision not to introduce

any evidence as an indication that he "had something to hide." These questions are disapproved because they attempt to ask jurors an abstract question which no juror can properly answer before hearing the evidence against the defendant.

**Am Jur 2d, Jury § 197.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

3. **Homicide § 583 (NCI4th)— first-degree murder and kidnapping—instructions—acting in concert—premeditation and deliberation and felony murder**

The trial court erred in a prosecution for first-degree murder and kidnapping in its instructions on acting in concert where the instructions were likely to be understood by the jury to permit convicting defendant of premeditated and deliberated murder, which requires a specific intent to kill, formed after premeditation and deliberation, when the only purpose shared between defendant and an accomplice was to kidnap the victims and when only the accomplice actually murdered the victims with the requisite specific intent to kill formed after premeditation and deliberation. While the instructions are not incorrect statements of the law insofar as they apply the acting in concert doctrine to defendant's criminal liability for first-degree murder under the felony-murder rule, they are erroneous insofar as they apply this doctrine to defendant's criminal liability for premeditated and deliberated murder. The instructions permit defendant to be convicted of premeditated and deliberated murder when he himself did not inflict the fatal wounds, did not share a common purpose to murder with the one who did inflict the fatal wounds and had no specific intent to kill the victims when the fatal wounds were inflicted. Where multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. One may not be criminally responsible under the theory of acting in concert for a crime like premeditated and deliberated murder, which requires a specific intent, unless he is shown to have the requisite specific intent.

**Am Jur 2d, Homicide § 507.**

**4. Criminal Law § 856 (NCI4th)— noncapital first-degree murder—instructions—appellate review—no error**

The trial court did not err in a noncapital first-degree murder and kidnapping prosecution by mentioning appellate review in the jury charge.

**Am Jur 2d, Trial §§ 1441 et seq.**

**Prejudicial effect of statement of court that if jury makes mistake in convicting it can be corrected by other authorities. 5 ALR3d 974.**

**5. Constitutional Law § 231 (NCI4th)— murder and kidnapping—murder convictions vacated—felony murder upheld—kidnapping arrested—no retrial**

Where defendant was charged with two first-degree murders and kidnappings and convicted of kidnapping and first-degree murder based on premeditation and deliberation and felony murder, but there was error in the instruction on first-degree murder based on premeditation and deliberation, the convictions for first-degree murder based on premeditation and deliberation were vacated; the felony murder convictions, which were not affected by the error, were upheld; and the kidnapping convictions, as the underlying felony, were arrested. Because defendant was duly convicted of the first-degree murders on a theory unaffected by the error, it was unnecessary, if not a violation of double jeopardy, to retry defendant on the theory affected by the error.

**Am Jur 2d, Criminal Law §§ 309 et seq.**

**Supreme Court's views as to application, in state criminal prosecutions, of double jeopardy clause of Federal Constitution's Fifth Amendment. 95 L. Ed. 2d 924.**

Justice MITCHELL concurring in part and dissenting in part.

Justice WEBB concurring.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from two judgments entered by Rousseau, J., on 25 June 1992, in the Superior Court, Yadkin County, sentencing defendant to life imprisonment. Defendant's motion to bypass the Court of Appeals as to additional

judgments was allowed by the Supreme Court on 27 January 1993. Heard in the Supreme Court on 11 October 1993.

*Michael F. Easley, Attorney General, by Jane R. Garvey, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

On 16 September 1991, a Wilkes County Grand Jury indicted defendant, Anthony Ray Blankenship, for the first-degree kidnappings and first-degree murders of Galvin Lee Sidden and Garry Patrick Sidden, Jr. Following an order changing venue to Yadkin County, defendant, because he was only 15 years old when the crimes were committed,[1] was tried noncapitally at the 22 June 1992 Criminal Session of Superior Court, Yadkin County. On 25 June 1992, the jury returned verdicts finding defendant guilty of each count of first-degree murder under both the theory of premeditation and deliberation and the theory of felony murder. The jury also found defendant guilty of both counts of first-degree kidnapping. The trial court sentenced defendant to life imprisonment for each of the two murders and imposed two forty-year sentences for the kidnapping convictions. The two life sentences were ordered to be served consecutive to each other and to a life sentence imposed in 1984. The two forty-year sentences for the kidnapping convictions, while consecutive to each other and to the 1984 life sentence, were to be concurrent with the two life sentences imposed here. Defendant appeals to this Court as of right from the judgments sentencing him to life imprisonment for each of the two murders, and the Court allowed defendant's motion to bring forward the kidnapping cases prior to consideration by the Court of Appeals.

We hold the trial court incorrectly instructed the jury on the principle of acting in concert as that principle applies to the theory of first-degree murder by premeditation and deliberation; therefore, we vacate the jury's findings that defendant committed two first-degree murders by premeditation and deliberation. Because there is no reversible error which affects the jury's verdicts that defendant is guilty of two first-degree murders under the alternative theory of

1. See N.C.G.S. § 14-17 (1993) (Persons "under 17 years of age" punishable by life imprisonment for first-degree murder.)

felony murder, the two consecutive terms of life imprisonment imposed thereon may stand. Since defendant's kidnapping convictions served as the underlying felonies for the convictions of first-degree felony murder, the kidnapping convictions merge with the convictions for first-degree murder; accordingly, judgments on the two kidnapping convictions are arrested.

## I.

Evidence presented at defendant's trial tended to show the following:

Between 10:00 p.m. and 10:30 p.m. on 21 July 1982, defendant, then 15 years old, went with his stepfather, Tony Sidden, to the property of Garry Sidden, Sr. in Wilkes County, North Carolina. Garry Sidden, Sr. owned a mobile home, grocery store and nightclub about a quarter of a mile from the mobile home where defendant and Tony Sidden lived. In a statement later made to police, defendant explained that he and his stepfather had planned to rob and kill Garry Sidden but that defendant had only "really discussed" the robbery. Tony Sidden apparently sought revenge for a previous incident in which Garry Sidden, Sr. had shot Tony. Defendant sought money with which to buy a dune buggy.

Tony Sidden and defendant parked a car on a logging road two hundred yards behind Tony's mobile home and walked to the property of Garry Sidden, Sr. Each carried a 12-gauge shotgun; defendant also carried a .38-caliber pistol. They positioned themselves near a shed located about thirty yards behind Garry Sidden, Sr.'s mobile home and waited for Garry Sidden, Sr. to come home from his nightclub. After thirty minutes defendant "got tired of waiting" and walked to Garry Sidden's mobile home and looked in the window. He saw Garry Sidden asleep on the living room couch. Defendant motioned for Tony to come down to the mobile home and the two waited there. Not long after, defendant saw Garry Sidden's two sons, Garry, Jr. and Galvin, walking toward their father's mobile home, from the nightclub. Garry, Jr. was sixteen years old and Galvin was ten years old at the time. Defendant and Tony Sidden forced the boys into their father's mobile home at gunpoint.

Once inside, either defendant or Tony Sidden told the boys to go into the kitchen and lie down. Garry, Sr. then awoke and Tony Sidden and defendant pointed their guns at him and told him to reveal "where the money was." Agitated, Garry, Sr. began to raise his voice, so Tony

Sidden shot a hole in the mobile home above Garry, Sr.'s head to quiet him.

Tony Sidden and defendant eventually ordered Garry, Sr. and his two sons out of the mobile home. Once outside, Garry, Sr. grabbed for Tony's shotgun and the two began to wrestle. Defendant shot Garry, Sr. in the back, causing him to fall. Tony Sidden then shot Garry, Sr. in the neck. After placing his hand on Garry, Sr.'s chest to confirm that he was dead, defendant took Garry, Sr.'s wallet containing over $300.00.

Tony Sidden and defendant then marched the two boys to the car they had parked earlier, forced the boys into the trunk and closed the lid. After driving awhile, Tony Sidden stopped the car on a dirt road and ordered the two boys out of the trunk. Leaving his .38-caliber pistol in the car, defendant stepped away to urinate. When he returned, Tony Sidden was forcing the boys to lie face-down on the road. Defendant asked Tony Sidden, "What are we going to do?" Tony Sidden replied, "We've got to shoot them." Defendant, carrying his shotgun, turned and walked a few feet away. Tony Sidden then shot each boy in the head with defendant's .38-caliber pistol. Tony Sidden and defendant left the two bodies where they lay and drove about three hours away to Spring Lake, in Cumberland County, North Carolina.

Defendant testified at trial that he had not shot the boys and had not wanted them shot. He had thought the boys would be tied up in the woods so that he and Tony Sidden could escape. Although defendant was armed and did not intervene to attempt to spare the boys' lives, he testified "there was not a lot [he] could do" to prevent their deaths.

Tony Sidden and defendant stayed at Spring Lake for the rest of the night and the following day. At some point during the day, defendant tossed the pistol into a nearby pond. That evening Tony Sidden asked defendant to return to Wilkes County to dispose of the boys' bodies. Defendant agreed to do so and drove back alone to Wilkes County. He found the bodies undisturbed, dragged them to the car and put them in the trunk. He then drove to an abandoned well on property once rented by his family in nearby Miller's Creek, North Carolina. Defendant dumped the two bodies into the well, poured lime and drain cleaner into the well to "take care" of the bodies, and covered the well opening with logs before returning to Cumberland County.

Tony Sidden and defendant remained at Spring Lake for several days until they learned from a television report that warrants had been issued for their arrest in conjunction with Garry Sidden Sr.'s murder. They fled North Carolina and lived in several states before eventually turning themselves in to authorities in September 1983. Tony Sidden and defendant were subsequently tried together and convicted for the first-degree murder of Garry Sidden, Sr. The trial court sentenced each of them to life imprisonment for that murder and this Court found no error in the trial. *State v. Sidden,* 315 N.C. 539, 340 S.E.2d 340 (1986). The fate of the two boys remained unknown, however, until defendant, serving his life sentence for the murder of Garry Sidden, Sr., confessed to the facts set out above on 30 August 1991. In September 1991, he led the police to the bodies of the two boys. Thereafter, defendant was charged with their murders and kidnappings, which are the subject of this appeal.

Other facts will be introduced in the discussion of the assignment of error to which they are pertinent.

## II.

[1] Defendant first contends the trial court erred by refusing during the trial to reappoint counsel to represent him after he earlier had waived counsel and proceeded *pro se.* Defendant bases this argument on certain statements made by the trial court before and on the first day of trial.

At his initial appearance on 18 September 1991, defendant requested and received appointed counsel, Mr. Charles Poole. On 20 April 1992, defendant appeared with Mr. Poole at a pretrial motions hearing and informed the court he wished to represent himself. The trial court inquired as to the reasons for defendant's change of heart and urged him to reconsider, but defendant was adamant and executed a written waiver of counsel. The trial court appointed Mr. Poole as standby counsel. The court informed defendant while Mr. Poole would be available to answer questions, he would not "go out and do the leg work" for defendant. Defendant indicated he understood, and the trial court reiterated, "He'll just answer your legal questions."

Defendant appeared in court again on 24 April 1992, and the trial court continued to urge defendant to reconsider his waiver of counsel. Defendant remained steadfast, and the following exchange took place:

THE COURT: Well, again, Mr. Poole will be sitting behind you during the course of the trial, or any time you are in the courtroom, to advise you if you need any advice, but, now, he cannot appear for you. He cannot answer questions. He cannot object to incompetent evidence.

DEFENDANT BLANKENSHIP: I understand that.

THE COURT: And, he's not going to be a leg man for you to run errands for you.

DEFENDANT BLANKENSHIP: I understand that.

THE COURT: He's just sitting there to advise you on any legal problem that might come up.

DEFENDANT BLANKENSHIP: (Nods head affirmatively).

After the court had set the date on which defendant's trial would begin, the following exchange occurred:

DEFENDANT BLANKENSHIP: Your Honor, the second week in June, that only allows me about a six week period to do what I have to do, it's not enough time.

THE COURT: Well, you had a lawyer for some period of time, and you just came in this week and fired your lawyer.

DEFENDANT BLANKENSHIP: I understand.

THE COURT: We're not going to continue it for that.

DEFENDANT BLANKENSHIP: All right.

THE COURT: And, if you later decide you want a lawyer, I'm not going to continue it because he says he's not ready.

DEFENDANT BLANKENSHIP: I understand.

THE COURT: But, you can use Mr. Poole any time you want him. When you tell me you want him for your lawyer, I will reinstate him as your lawyer.

DEFENDANT BLANKENSHIP: I've made up my mind.

Defendant's trial began two months later on 22 June 1992. At the end of the first day, the trial court again questioned defendant about his decision to serve as his own counsel:

THE COURT: Now, you've heard what we've done here today.

DEFENDANT BLANKENSHIP: Yes, sir.

THE COURT: You still have Mr. Poole sitting there behind you.

DEFENDANT BLANKENSHIP: (Nods head affirmatively).

THE COURT: You still don't want him to take over this case?

DEFENDANT BLANKENSHIP: No, sir.

. . . .

THE COURT: Anyway, your lawyer is there if you want him. You can have him, anytime you want him.

DEFENDANT BLANKENSHIP: All right.

Defendant continued to represent himself until after the prosecution had rested and defendant had called two witnesses of his own. At that point, defendant asked the court to allow Mr. Poole to take over the case. The trial court refused, stating:

Well, you have elected to represent yourself. Our law says you can't appear with counsel and act as co-counsel yourself. And, at this stage of the trial, when the State's rested, I'm going to DENY your motion. I will allow you to continue to consult with Mr. Poole whenever you need to do so, but as far as him stepping in and taking over the case, in my discretion, I'm DENYING that.

Defendant contends the trial court assured him at the 24 April 1992 pretrial hearing and on the first day of trial that appointed counsel would be reinstated upon his request; therefore, the trial court "had no discretion to deny the request when it was made." Defendant does *not* argue that a trial court generally must grant a request for counsel made by a defendant who has previously exercised his right to proceed *pro se*, nor that defendant's initial exercise of his right to self-representation was premised on any assurances by the trial court that counsel could be reinstated. Rather, defendant maintains the trial court on two occasions unequivocally promised defendant it would reinstate appointed counsel upon his request and thereby lulled defendant into continuing to exercise his right to represent himself. Defendant argues that the trial court conferred a right on defendant to have counsel reinstated upon request, a right which it then had no discretion to withdraw.

It is well-settled that a defendant in a state or federal prosecution has a right of self-representation. The Sixth and Fourteenth Amend-

ments to the Constitution of the United States "guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566 (1975). Embodied in this right to counsel is the right of a criminal defendant to represent himself. *Id.* at 832, 45 L. Ed. 2d at 580. A defendant who chooses to represent himself "must be permitted to do so upon the sole condition that he make a knowing and voluntary waiver of the right to counsel." *Id.* at 835, 45 L. Ed. 2d at 581-82. Although a defendant's exercise of his or her right of self-representation must be honored, the trial court, in its discretion, may appoint standby counsel to assist defendant. N.C.G.S. § 15A-1243 (1988); *State v. Thomas*, 331 N.C. 671, 677, 417 S.E.2d 473, 478 (1992).

Defendant's argument is based on the principle that where a criminal defendant relies on a right accorded him by a court or any agency of government, he may not be prejudiced by such reliance, even if the right was erroneously granted. *See, e.g., Lankford v. Idaho*, 500 U.S. 110, 114 L. Ed. 2d 173 (1991); *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976); *Johnson v. U.S.*, 318 U.S. 189, 87 L. Ed. 2d 704 (1943); *Knox v. Collins*, 928 F. 2d 657 (5th Cir. 1991) (Per curiam). We reject the argument here for two reasons. First, there is no showing in the record or transcript that defendant relied on anything the trial court said in choosing to represent himself. Indeed, the transcript demonstrates that defendant deliberately disregarded the trial court's advice with regard to his self-representation decision. He made this decision, the transcript reveals, not because of, but in spite of, Judge Rousseau's advice. We are convinced both his initial decision to proceed *pro se* and his continuing in this mode would have occurred even if Judge Rousseau's statements concerning future availability of counsel had not been made.

Second, statements made by the trial court at the 24 April 1992 hearing ("When you tell me you want him for your lawyer, I will reinstate him as your lawyer.") did not constitute a guarantee that the court would reinstate appointed counsel at *any time*, no matter how late in the proceedings, upon defendant's request. The statements were made nearly two months before trial and were merely an expression of the court's willingness to reinstall Mr. Poole within a reasonable time *before* defendant's trial began. Indeed, immediately before making these statements, the court had refused to continue the trial to afford defendant more time to prepare and had informed

defendant that if he later decided he wanted an attorney, the court was "not going to continue it because [your attorney] says he's not ready." This indicates the trial court was contemplating a *pretrial* change of heart by defendant and making clear to defendant it would not postpone the trial to accommodate his indecisiveness. *See State v. Smith*, 27 N.C. App. 379, 381, 219 S.E.2d 277, 279 (1975) (defendant waited until day trial began to withdraw waiver and seek appointment of counsel, a tactic which, if "employed successfully, [would permit] defendants . . . to control the course of litigation and sidetrack the trial").

Neither did the statements made by the trial court on the first day of trial constitute a guarantee that the court would reinstate counsel at any time thereafter upon defendant's request. At the close of the first day, the trial court again questioned defendant about his desire to proceed *pro se*. When defendant insisted on continuing to represent himself, the trial court simply stated to defendant, "[Y]our lawyer is there if you want him." and "You can have him, anytime you want him." This was not a guarantee that the trial court would allow Mr. Poole to take over defendant's case as trial counsel after the trial had commenced; it was a mere reiteration that Mr. Poole, as standby counsel, would be available to advise defendant during the course of the proceedings.

Since defendant did not rely on nor did the trial court make any promises to defendant that it would reinstate Mr. Poole as trial counsel at any time during the trial, the trial court did not abuse its discretion in denying defendant's request where: (1) the request was made after the State had rested and defendant himself had called two witnesses and (2) for the majority of the trial—indeed, for *all* of the trial up to the point of defendant's request—defendant had not only the representation he wanted (himself), but also the assistance of standby counsel. Accordingly, we conclude that this assignment of error is without merit.

III.

[2] By another assignment of error, defendant maintains the trial court committed reversible error by prohibiting him from asking potential jurors whether they would regard a defense decision not to introduce any evidence as an indication that he had "something to hide." Following its initial examination of venirepersons called to the jury box, the prosecution passed twelve prospective jurors to defendant. After defendant's examination of these jurors, the trial court

excused two jurors for cause; and defendant exercised peremptory challenges against three others. The prosecution then examined five new prospective jurors and passed them to defendant. Defendant asked these five jurors whether they would presume him innocent and whether they "would weigh the evidence from both sides and come back with a verdict of not guilty if that's what the evidence shows." The following exchange then occurred:

> DEFENDANT BLANKENSHIP: If I choose not to put on a defense, would you hold that against me; would you take that as an indicator that I have something to hide or . . .

> MR. LYON: . . . well, OBJECTION . . .

> DEFENDANT BLANKENSHIP: . . . or will you put the burden of proof on the State . . .

> THE COURT: . . . SUSTAINED to that. I'll let you ask them about the presumption of innocence. You asked them about that.

Defendant contends that by prohibiting him from asking this question, the trial court committed reversible error in that it prevented him "from intelligently exercising his remaining peremptory challenges" and "from legitimately attempting to discover disqualifying bias." We disagree.

In *State v. Hill*, 331 N.C. 387, 403-04, 417 S.E.2d 765, 772 (1992), *cert. denied,* —— U.S. ——, 122 L. Ed. 2d 684, *reh'g denied,* —— U.S. ——, 123 L. Ed. 2d 503 (1993), we held the trial court properly prevented the defendant from asking prospective jurors whether they would "feel the need to hear from" defendant in order to return a verdict of not guilty. We explained that the defendant's question was an "attempt[] to 'stake out' the jurors as to their answers to legal questions before the jurors had been informed in any manner of applicable legal principles by which they should be guided" and was therefore improper. *Id.* at 404, 417 S.E.2d at 772. *See also State v. Phillips*, 300 N.C. 678, 681-82, 268 S.E.2d 452, 455 (1980) (trial court did not abuse its discretion by preventing defense counsel from asking prospective juror whether "defendant would have to prove anything to her before he would be entitled to a verdict of not guilty"). We believe the question here is sufficiently similar to those in *Hill* and *Phillips* to warrant the same result reached in those cases. These questions were disapproved in *Hill* and *Phillips* and are disapproved here because they attempt to ask jurors an abstract question which no juror can properly answer before hearing the evidence against the

defendant. Only after hearing the case against defendant can a juror reasonably determine how to view the failure of the defendant to proffer a defense. These kinds of questions are distinguishable from questions concerning a defendant's failure to testify in his own defense. *Cf., State v. Hightower*, 331 N.C. 636, 641, 417 S.E.2d 237, 240 (1992) (error not to allow challenge for cause where juror indicated defendant's failure to testify might affect juror's ability to give defendant a fair trial). Because of the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendment in the federal constitution and Article I, Section 23 in our State constitution, it is always improper, whatever the circumstances, for a juror to consider adversely to him a defendant's failure to testify in his defense. N.C.G.S. § 8-54 (1986); *State v. Monk*, 286 N.C. 509, 212 S.E.2d 125 (1975); *State v. McCall*, 286 N.C. 472, 212 S.E.2d 132 (1975); *State v. Roberts*, 243 N.C. 619, 91 S.E.2d 589 (1956); *State v. McLamb*, 235 N.C. 251, 69 S.E.2d 537 (1952). On the other hand, it may be proper for a juror to consider adversely to defendant, defendant's failure to proffer evidence in his defense when the State's case and other circumstances would make it reasonable for defendant to do so if a defense were in fact available. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986) (prosecution may comment on defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by State); *State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982); *State v. Smith*, 290 N.C. 148, 226 S.E.2d 10, *cert. denied*, 429 U.S. 932, 50 L. Ed. 2d 301 (1976). Accordingly, this assignment of error is without merit.

IV.

[3] By another assignment of error, defendant contends the trial court committed reversible error in its instructions on acting in concert. The trial court defined acting in concert as follows:

> For a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime. If a defendant is present, with one or more persons, and acts together with a common purpose to commit murder, *or* to commit kidnapping, each of them is held responsible for the acts of the others, done in the commission of that murder *or* kidnapping, as well as any other crime committed by the other in furtherance of that common design.

(Emphasis added.) Later, after charging on kidnapping, the trial court summarized what the jury must find to convict defendant of murder on a premeditation and deliberation theory, saying in part:

Now, members of the jury, on the first degree murder, of course, he's also charged with first degree murder of each of those two boys, Garry and Galvin.

Now, members of the jury, on this murder, there are two ways you can find the defendant guilty. Of course, there's just one murder of each of the boys, but there are two ways you can find him guilty, either or both of these ways.

That is, the first way, on the basis of malice and premeditation and deliberation. That is first degree murder, which is the intentional and unlawful killing of a human being with malice, and with premeditation and deliberation.

The second way you may find this defendant guilty of murder in either or both of these cases, is under the felony murder rule, which is the killing of a human being in the perpetration of a kidnapping with a deadly weapon.

Now, I charge for you to find the defendant guilty of first degree murder on the basis of malice, premeditation and deliberation, the State of North Carolina must prove five things beyond a reasonable doubt, and again, these five things apply to each one of the, of the murder cases;

First, that the defendant, *or someone acting in concert with him*, intentionally and with malice, killed Gary Sidden, and killed Galvin Sidden, with a deadly weapon.

. . . .

Third, that the defendant *or someone acting in concert with him*, intended to kill Garry Sidden and intended to kill Galvin Sidden.

. . . .

Fourth, that the defendant, *or someone acting in concert with him*, acted after premeditation, that is, that he formed the intent to kill over some period of time, however short; and

Fifth, that the defendant acted with deliberation *or someone acting in concert with him*, which means that he acted while he was in a cool state of mind.

(Emphasis added.) In its trial mandate on the Garry Sidden murder the trial court charged:

**STATE v. BLANKENSHIP**

[337 N.C. 543 (1994)]

> Now, members of the jury, with respect to the murder charges, I charge if you find from the evidence beyond a reasonable doubt, that on or about that 21st day of July, 1982, the defendant or someone acting in concert with him, intentionally shot Garry Sidden, with a deadly weapon, and that this proximately caused Garry Sidden's death, and that the defendant or someone acting in concert with him, intended to kill Garry Sidden, and that he acted with malice after premeditation and with deliberation, it would be your duty to return a verdict of guilty of first degree murder on the basis of malice, and on the basis of premeditation and deliberation.

A similar mandate was given regarding the murder of Galvin Sidden. On the felony-murder theory the trial court charged:

> So members of the jury, I charge if you find from the evidence beyond a reasonable doubt, that on or about that day, that the defendant or someone acting in concert with him, while committing kidnapping, the defendant or someone acting in concert with him, killed Garry Sidden, and that the defendant's act or someone acting in concert with him, was the proximate cause of Garry Sidden's death, it would be your duty to return a verdict of guilty of first degree murder under the felony rule.

While these instructions are not incorrect statements of the law insofar as they apply the acting in concert doctrine to defendant's criminal liability for first-degree murder under the felony-murder rule, they are erroneous insofar as they apply this doctrine to defendant's criminal liability for premeditated and deliberated murder. The vice in the instructions is that they are likely to be understood by the jury to permit convicting defendant of premeditated and deliberated murder, which requires a specific intent to kill, formed after premeditation and deliberation, when the only common purpose shared between defendant and Tony Sidden was to kidnap the boys and when only Tony Sidden actually murdered the boys with the requisite specific intent to kill formed after premeditation and deliberation. In other words, the instructions permit defendant to be convicted of premeditated and deliberated murder when he himself did not inflict the fatal wounds, did not share a common purpose to murder with the one who did inflict the fatal wounds and had no specific intent to kill the victims when the fatal wounds were inflicted.

The doctrine of acting in concert does not reach so far. Under this doctrine, where a single crime is involved, one may be found guilty of

committing the crime if he is at the scene with another with whom he shares a common plan to commit the crime, although the other person does all the acts necessary to effect commission of the crime. *State v. Jeffries*, 333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993); *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618 (1989), *judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, —— U.S. ——, 116 L. Ed. 2d 174 (1991). Under this doctrine, where multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). As a corollary to this latter principle, one may not be criminally responsible under the theory of acting in concert for a crime like premeditated and deliberated murder, which requires a specific intent, unless he is shown to have the requisite specific intent. *State v. Reese*, 319 N.C. 110, 141, 353 S.E.2d 352, 370 (1987). The specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan. *Joyner*, 297 N.C. at 358, 255 S.E.2d at 396. Although a common plan for all crimes committed may exist at the outset of the criminal enterprise, its scope is not invariable; and it may evolve according to the course of events. Thus, where a series of crimes is involved, all of which are part of the course of criminal conduct, the common plan to commit any one of the crimes may arise at any time during the conduct of the entire criminal enterprise. *See Joyner*, 297 N.C. 349, 255 S.E.2d 390.

In *Joyner*, five men assaulted a woman in her home. During the course of several hours, the men raped the woman repeatedly, forced her to perform acts of fellatio, stole a ring from her and forced a drink bottle into her rectum. The defendant was one of the five men and admitted at trial to raping the victim. Accordingly, he was convicted of rape. He was also convicted of all the other crimes committed during the assault based on an acting-in-concert theory. This Court upheld his convictions, even though it had not been shown that the defendant personally committed any acts other than rape, saying: "the evidence is plenary that all five of these men were acting together pursuant to a common plan to assault, terrorize, sexually abuse, and steal from [the victim]." *Id.* Thus the defendant was guilty of all the crimes charged because he shared with his cohorts in a common plan to commit all the crimes, a common plan which evolved as the criminal enterprise continued so as eventually to include all crimes

committed. Because he shared in the common plan, he was guilty not only of all the general intent crimes, but also of larceny, which requires the specific intent personally to deprive the owner of personal property. In other words, his sharing in the common plan was sufficient in itself to prove the specific intent required for a larceny conviction.

The foregoing principles governing the acting-in-concert doctrine are necessary in order to insure that a defendant not be convicted of any crime for which he did not have the requisite *mens rea*. As we said in *Reese*, 319 N.C. *at* 142, 353 S.E.2d at 370:

It is a fundamental notion of criminal law that where a crime calls for a particular *mens rea*, it must be proved by the State beyond a reasonable doubt. *See* 1 W. LaFave & A. Scott, Substantive Criminal Law, 3.4 (1986).

In *Reese*, the defendant and his codefendant planned to rob a convenience store. Upon entering the store, the codefendant stabbed the store clerk who later died as a result of the wounds. After the stabbing, the defendant entered the store, grabbed money from the cash register and fled. On appeal, we held there was insufficient evidence to find that the defendant "actually participated in the actual killing or intended that a killing take place"; therefore, he could not be convicted of premeditated and deliberated murder. *Id.* at 144, 353 S.E.2d at 371.

That a defendant charged under the theory of acting in concert for a specific intent crime must possess the requisite *mens rea* for that crime is supported by cases from other jurisdictions. *Clark v. Jago*, 676 F.2d 1099 (6th Cir. 1982) (where purpose to kill is essential element of aggravated murder, jury instruction permitting that element of culpability to be found if either the defendant or his accomplice has the purpose to kill violates due process.), *cert. denied*, *Marshall v. Clark*, 466 U.S. 977, 80 L. Ed. 2d 832 (1984); *Commonwealth v. Hartley*, 424 Pa. Super 29, 621 A.2d 1023 (1993) (accomplice to first-degree murder had to have the "willful, deliberate, and premeditated specific intent to kill at the time of the killing" in order to be convicted); *Echols v. State*, 818 P.2d 691 (Alaska 1991) (convicting accomplice of first-degree assault required showing that accomplice intended victim suffer physical injury); *State v. Bridges*, 133 N.J. 447, 628 A.2d 270 (1993) (accomplice liability requires specific intent to commit the crime), *certification dismissed*, 134 N.J. 482, 634 A.2d 528 (1993); *People v. Cabey*, 199 A.D.2d 197, 605 N.Y.S.2d 297 (1993)

(accomplice liability for second-degree murder requires proof that accomplice shared principal's specific intent to cause victim's death and that accomplice solicited, requested, commanded, importuned, or intentionally aided principal in his attempt on victim's life), *appeal granted*, 82 N.Y.2d 933, 632 N.E.2d 495, 610 N.Y.S.2d 185 (1994); *Commonwealth v. Huffman*, —— Pa.——, 638 A.2d 961 (1994) (trial court erred by instructing jury it could find accomplice guilty of first-degree murder even if accomplice did not have specific intent to kill); *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982) (requisite mental state for the crime with which accomplice is charged must be proved beyond a reasonable doubt to be one which accomplice harbored and cannot depend upon proof of mental state of principal), *cert. denied, Bachert v. Pennsylvania*, 460 U.S. 1043, 75 L. Ed. 2d 797 (1983); *Commonwealth v. Daughtry*, 417 Mass. 136, 627 N.E.2d 928 (1994) ("joint venturer" in a crime must share principal mental state required for crime); *Oates v. State*, 97 Md. App. 180, 627 A.2d 555 (1993) (accomplice may be convicted on accomplice liability theory only for those crimes as to which he personally has requisite mental state); *State v. Polanco*, 26 Conn. App. 33, 597 A.2d 830 (1991) ("An accomplice is one who, acting with the mental state required for the commission of an offense, solicits, requests, commands, importunes or intentionally aids another person to engage in conduct that constitutes an offense."), *cert. denied*, 220 Conn. 926, 598 A.2d 367 (1991); *State v. Molano*, 253 Cal. App. 2d 841, 61 Cal. Rptr. 821 (1967) (instructing jury that one issue was whether defendants or either of them entered third party's house was improper because it may have given jury erroneous impression both defendants were guilty if either defendant had intent to steal upon entering house); *Wilson v. People*, 103 Colo. 441, 87 P.2d 5 (1939) (accomplice not guilty of larceny committed by principal in liquor store where, although accomplice helped principal into store and received liquor as principal handed it out to him from inside store, accomplice informed police while principal was in store and never intended to permanently deprive store owner of goods). *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 6.7, at 143-44 (1986).

We recognize there is support in *State v. Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (1991), for the instruction given here by the trial court. In *Erlewine*, we said:

> The theory of acting in concert . . . requires a common purpose to commit a crime. *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). Thus, before the jury could . . . convict the defendant of

the crime of assault with a deadly weapon with intent to kill inflicting serious injury, it had to find that the defendant and [his confederate] had a common purpose to commit *a* crime; it is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed. Instead, the correct statement of the law is found in trial court instructions which we have held in a prior case to be without error:

*Id.* at 637, 403 S.E.2d at 286. For this statement in *Erlewine*, the Court relied on *State v. Westbrook*, 279 N.C. 18, 181 S.E.2d 572 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972). In *Westbrook*, the Court approved without discussion the following jury instruction:

[I]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principle if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*Id.* at 41-42, 181 S.E.2d at 586.

We are now convinced that our reading of *Westbrook* in *Erlewine* was overly broad. When the Court's approval of the jury instruction in *Westbrook* is read in light of the facts there, it is clear that the Court did not intend to expand accomplice liability under the acting-in-concert doctrine beyond those crimes which were within the common plan of the accomplices.

In *Westbrook*, the defendant and his accomplice decided to rob a woman who had just entered her car. Driving a car he had stolen with his accomplice earlier in the day, defendant drove up next to the victim's car saying, "[t]here's a hit." At that point—and here the evidence is conflicting—either defendant or his accomplice got out of the car and entered the victim's car. A struggle ensued and the victim was shot. The two defendants then drove the stolen car and the victim's car to an isolated area where, according to the State, the defendant fired four more bullets into the victim, killing her. The two defendants then hid the body and returned to town.

These facts clearly support the inference that the defendant and his accomplice shared in a common plan which included not just the robbery, but also the murder. Faced with these facts, it is not surprising that this Court sustained the trial court's reference to other crimes

committed "in pursuance of the common purpose . . . or as a natural and probable consequence thereof." Indeed, the *Westbrook* Court probably understood the trial court's instruction as creating criminal liability in the defendant to the extent that the crimes for which he was convicted were contemplated in the common plan. A broader reading of the doctrine of concerted action would have been a departure from settled law and would have merited some discussion.

Subsequently, in any event, the Court in *Reese* laid to rest any ambiguity that may have inhered in *Westbrook*, stating:

We note that there is language in *Westbrook* suggesting that once a defendant participates in a felony, he is held responsible for all crimes arising out of that felony. [Citation omitted]. *Westbrook*, however, does not change the rule that, for crimes requiring a specific *mens rea*, that *mens rea* must be shown as to each defendant.

319 N.C. at 141 n.8, 353 S.E.2d at 370 n.8.

Neither were our statements in *Erlewine* necessary to a decision in that case. The instructions on acting in concert complained of were well within the confines of the principle that for a defendant to be found guilty of any crime under this doctrine, the crime must have been one contemplated by the common plan. *See Erlewine*, 328 N.C. at 635-36, 403 S.E.2d at 285.

Because of the error in the trial court's instruction on acting in concert, the jury's findings of guilt of first-degree murder on the theory of premeditation and deliberation cannot stand. The evidence of defendant's guilt on this theory, unlike the evidence supporting guilt under the felony-murder theory, is close. Thus, there is a reasonable possibility that had the instructional error on acting in concert not occurred, a different result would have been reached. N.C.G.S. § 15A-1443(a) (1988). We, therefore, vacate the jury's findings of guilt insofar as they are based on a theory of premeditation and deliberation.

V.

By another assignment of error, defendant argues the evidence was insufficient to support submission of first-degree murder to the jury in both murder cases on the theory of premeditation and deliberation. Because we are vacating the jury's findings of guilt on a pre-

**STATE v. BLANKENSHIP**

[337 N.C. 543 (1994)]

meditation and deliberation theory, we need not address this assignment of error.

## VI.

**[4]** By his final assignment of error, defendant argues the trial court committed reversible error by mentioning appellate review in the jury charge. Defendant concedes, and we agree, that he cannot effectively distinguish this portion of the charge from that which we found free from error in *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988), *sentence vacated*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 326 N.C. 592, 391 S.E.2d 815 (1990). Therefore, this assignment of error is without merit.

## Conclusion

**[5]** Ordinarily a trial error committed in jury instructions would warrant a new trial on the issue affected by the instructions. Defendant, however, has been properly convicted of first-degree murders on a felony-murder theory. "Premeditation and deliberation is one theory by which one may be convicted of first-degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." *State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989). Because defendant has been duly convicted of first-degree murders on a theory unaffected by the instructional error, we think it unnecessary, if not a violation of constitutional double jeopardy, to retry defendant for the same murders on the theory which was affected by the instructional error.[2]

The result is that the two verdicts against defendant for first-degree murder on the theory of felony murder are without error and are left undisturbed. Because we are sustaining defendant's convictions of first-degree murder only on a felony-murder theory, with kidnapping as the underlying felony, the kidnapping convictions merge with the murder convictions; and defendant may not be separately sentenced for kidnapping. *State v. Gardner*, 315 N.C. 444, 450-60, 340 S.E.2d 701, 706-12 (1986); *State v. Silhan*, 302 N.C. 223, 261-62, 275 S.E.2d 450, 477 (1981). Accordingly, we arrest judgment on defendant's two convictions for kidnapping.

2. Defendant, we note, has not asked for a new trial on the murder charge; he asks only that the verdict of guilt on a premeditation and deliberation theory be set aside. We note further that the trial judge ordered that the kidnapping sentences run concurrently with the sentences imposed on the murder convictions. The result we reach, therefore, has little practical effect on the outcome of the trial from which this appeal is taken.

No. 92 CRS 1544, first-degree kidnapping—JUDGMENT ARRESTED.

No. 92 CRS 1545, first-degree kidnapping—JUDGMENT ARRESTED.

No. 92 CRS 1546, CONVICTION OF FIRST-DEGREE MURDER ON BASIS OF PREMEDITATION AND DELIBERATION VACATED; NO ERROR IN CONVICTION OF FIRST-DEGREE MURDER ON BASIS OF FELONY MURDER.

No. 92 CRS 1547, CONVICTION OF FIRST-DEGREE MURDER ON BASIS OF PREMEDITATION AND DELIBERATION VACATED; NO ERROR IN CONVICTION OF FIRST-DEGREE MURDER ON BASIS OF FELONY MURDER.

Justice MITCHELL concurring in part and dissenting in part.

I concur only in the majority's holding that there is no error in the judgments against the defendant for each of the first-degree murders to the extent they are based on the felony-murder doctrine. I dissent from those parts of the decision of the majority arresting both judgments against the defendant for first-degree kidnapping and vacating the two judgments against the defendant for first-degree murder to the extent they are based on the theory of premeditation and deliberation.

I respectfully disagree with the majority's conclusion that the trial court committed reversible error in its jury instructions on acting in concert. The trial court instructed the jury, *inter alia*, as follows:

> For a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime. If a defendant is present, with one or more persons, and acts together with a common purpose to commit murder, or to commit kidnapping, each of them is held responsible for the acts of the others, done in the commission of that murder or kidnapping, as well as *any other crime* committed by the other *in furtherance of that common design.*

(Emphasis added.) The trial court then went on to instruct, in essence, that the jury could find the defendant Anthony Ray Blankenship guilty of the first-degree murders on the theory of premeditation and deliberation if it found that Tony Sidden, acting in furtherance of a common design with Blankenship to kidnap the boys, intentionally killed the boys with malice after premeditation and deliberation.

The majority concludes that a defendant may not be held criminally responsible under the theory of acting in concert for a crime which requires a specific intent, such as premeditated and deliberate murder, unless the defendant *himself* had the required specific intent. Although I recognize that the conclusion of the majority in this regard represents the law of a majority of American jurisdictions, I respectfully submit that it is contrary to the law of North Carolina as it has existed prior to the decision of the majority in this case.

As early as 1858, this Court found it already "a well established principle, that where two agree to do an unlawful act, each is responsible for the act of the other, provided it be done in pursuance of the original understanding, *or* in furtherance of the common purpose." *State v. Simmons*, 51 N.C. (6 Jones) 21, 24-25 (1858) (emphasis added). We held in *Simmons* that there was evidence that the defendant and his son had taken concerted action to beat the deceased or to unlawfully arrest him without a warrant and, therefore, the act of the son in killing the deceased "was clearly in furtherance of the common purpose [to beat or arrest], so as to make the [defendant father] responsible for [the killing]." *Id.* at 25 (citing Foster's Crown Law at 351-352). Indeed, this Court has always recognized that:

> If two persons are engaged in pursuit of an unlawful object, the two having the same object in view, and in pursuit of that common object one of them does an act which is the cause of death, under such circumstances that it amounts to murder in him, it amounts to murder in the other also.

*State v. Finley*, 118 N.C. 1162, 1171, 24 S.E. 495, 499 (1896) (quoting *Regina v. Cox*, 4 C. & P. at 538). *Accord State v. Gooch*, 94 N.C. 987, 1014 (1886).

More recently, we applied the foregoing well-established principles to a case involving a homicide occurring during the course of a robbery. *See State v. Westbrook*, 279 N.C. 18, 181 S.E.2d 572 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761, *on remand*, 281 N.C. 748, 191 S.E.2d 68 (1972). In that case, the defendant Westbrook testified that he and a man named Frazier undertook to rob their victim. Frazier got out of the car Westbrook was driving and into the victim's car in order to carry out the robbery. While attempting to rob the victim, Frazier shot her, causing her death.

In *Westbrook*, the trial court instructed the jury that one of the theories upon which the State was proceeding against the defendant

for murder was that the defendant and Frazier were acting in concert. This Court expressly stated that it found no error in the trial court's instructions to the jury in *Westbrook* that

> if two persons are acting together, in pursuance of a common plan and common purpose to rob, and one of them actually does the robbery, both would be equally guilty within the meaning of the law and if "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of *any other crime* committed by the other in pursuance of the common purpose; that is, the *common plan to rob* or as a natural or probable consequence thereof."

*Id.* at 41-42, 181 S.E.2d at 586 (emphasis added). Relying upon cases such as *Westbrook* and its antecedents, we have very recently reemphasized these long-established principles. *E.g., State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993); *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991).

Citing *State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987), however, the majority concludes that the jury in the present case should have been instructed that it could convict the defendant Blankenship of premeditated and deliberate first-degree murder only if it found that at the time Tony Sidden killed the two boys, Blankenship himself intended, after premeditation and deliberation, that they be killed. To the extent that our opinion in *Reese* may be so construed, however, I believe it to represent an inadvertent misstatement of the law by this Court. Certainly, any such reading of *Reese* is contrary to our more recent and quite specific holdings on this question in *Harvell* and *Erlewine*.

I believe that until today the law of this jurisdiction has been that where two persons act in concert to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime (in the present case, kidnapping), but he is also guilty of any other crime (here, murder) committed by the other in pursuance of the common purpose (here, to commit kidnapping) *or as a natural or probable consequence thereof. Harvell*, 334 N.C. at 364, 432 S.E.2d at 129; *Erlewine*, 328 N.C. at 637, 403 S.E.2d at 286; *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618-19 (1989), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573 (1991); *State v. Oliver*, 309 N.C. 326, 362, 307 S.E.2d 304, 327 (1983); *Joyner*, 297 N.C. at 357-58, 255

S.E.2d at 395-96; *Westbrook*, 279 N.C. at 41-42, 181 S.E.2d at 586. Therefore, I would hold that the trial court did not err by instructing the jury that it could find the defendant Blankenship guilty of first-degree murder on the theory of premeditation and deliberation if it found that he acted in concert with Tony Sidden to commit a kidnapping and Tony Sidden committed premeditated and deliberate murder in pursuance of their common purpose to kidnap or as a natural or probable consequence thereof. *Westbrook*, 279 N.C. at 41-42, 181 S.E.2d at 586.

The majority is correct in its view that we have often approved instructions by trial courts where multiple crimes were involved in which the trial court instructed that when two people act together pursuant to a common plan, both are guilty of the crimes included within the common plan which are committed by either of them. *E.g.*, *State v. Jeffries*, 333 N.C. 501, 428 S.E.2d 150 (1993); *State v. Laws*, 325 N.C. 81, 381 S.E.2d 609 (1989), *judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, —— U.S.——, 116 L. Ed. 2d 174 (1991); *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). We did so in those cases because the evidence tended to support only one reasonable finding; if the crimes were committed by the defendants, all defendants shared in a common plan and intent to commit all of the crimes charged. The fact that the instructions given were correct *in light of the evidence in those cases*, however, does not compel the majority's holding that in all cases where two people are acting together in pursuit of a common plan to commit one crime but other crimes are committed by one of them in pursuance of the common plan, the other is guilty only of the one crime which he specifically intended be committed. Instead, the rule always has been, and in my view should continue to be, that:

> [I]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principle if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*Erlewine*, 328 N.C. at 637, 403 S.E.2d at 286 (quoting *Westbrook*, 279 N.C. at 41-42, 180 S.E.2d at 586). Therefore, I respectfully disagree with the majority's conclusion that the trial court erred in its instructions on the doctrine of acting in concert in the present case. For that

reason, I dissent from those parts of the decision of the majority vacating the two judgments against the defendant for first-degree murder to the extent those judgments are based on the theory of premeditation and deliberation.

The majority also holds that because it vacates the judgments of first-degree murder against the defendant to the extent they are based upon a premeditation and deliberation theory, the judgments against him for first-degree murder must be sustained only on a felony-murder theory, with kidnapping as the underlying felony. Therefore, the majority holds that the kidnapping convictions merge with the murder convictions, and the defendant may not be separately sentenced for the kidnappings. Accordingly, the majority arrests the judgments for the defendant's two convictions for first-degree kidnapping.

As I have indicated previously herein, it is my view that the first-degree murder judgments against the defendant are properly based upon both the theory of premeditation and deliberation and the theory of felony murder. That being the case, I dissent from the majority's conclusion that the judgments against the defendant for first-degree kidnapping merged with the murder convictions and must be arrested. I concur only in those parts of the decision of the majority holding that the judgments against the defendant for first-degree murder are without error to the extent they are based on the felony-murder theory.

Justice WEBB concurring.

I concur in the result reached by the majority. I believe Justice Mitchell is correct in saying that the law in this state is that if two or more persons act in concert to commit a crime, each of them is guilty of any crime committed by the other in pursuance of the common purpose or as a natural consequence thereof. I do not believe the rule applies in this case, however.

The murders committed by Tony Sidden were not done in pursuance of a common purpose to kidnap the two victims or as a natural consequence thereof. For that reason, the defendant is not guilty of first-degree murder based on the premeditation and deliberation of Tony Sidden.