THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DUANE G. DAVIS, Defendant-Appellant.

Second District   No. 2—86—0664

Opinion filed February 3, 1988.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Duane Davis, was convicted of possession of less than 30 grams of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)), and possession of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(a)), and was sentenced to the maximum term of three years in the Department of Corrections. He appeals, contending that (1) his conviction was improper because the State failed to prove he had a criminal culpable intent; and (2) the trial court did not consider defendant's civic-minded purpose for possessing the drugs when imposing sentence.

Defendant testified in trial that he was president of an organization known as the "Self-Help Organization for the Redevelopment and Re-education of the Young" (SHORTY), which opposes drugs, guns, gang activities and stealing. Defendant wanted to demonstrate graphically to the mayor and chief of police how easy it was to obtain drugs in south Waukegan. He had invited them to a SHORTY dinner on February 9, 1986, at which time he had planned to present them with small quantities of drugs which defendant had purchased. Neither official attended the dinner. The following morning, just after 8 o'clock, Waukegan police officer Paul Hansen observed defendant driving westbound on an eastbound one-way street then stop the car in front of the police station, parking lengthwise across four diagonal parking spaces. Defendant got out of the car and said to Hansen, "Give me any tickets you need. I'm going to see the mayor and the chief of police." Defendant walked into city hall while Hansen ticketed his car for improper parking. Hansen testified that he saw defendant inside

the building near the mayor's office, "yelling obscenities at passersby and causing a great deal of disturbance."

Defendant testified that Hansen approached him and told him that he would have to move his car. Defendant told Hansen to go ahead and have it towed and offered Hansen $100 an hour to let it remain where it was, because he had to see the mayor. Hansen testified that he advised defendant to cease his disorderly conduct or he would be arrested, whereupon defendant responded, "I am God, and you cannot arrest God." When defendant continued his disorderly behavior, Hansen and Sergeant John Angelos arrested him.

Angelos took defendant to the police station for booking and as he began to search defendant, the latter told him, "I got grass in my pocket." Angelos reached in defendant's pants pocket and removed a small bag which was later proved to contain 1.01 grams of marijuana. As Angelos continued the search, defendant said, "I have also got cocaine in my pocket." Angelos reached into another pocket and removed a small vial which later proved to contain .10 grams of cocaine. Angelos then called an evidence technician and gave defendant his *Miranda* warnings.

Defendant's own testimony was similar in many respects to that of Hansen and Angelos. He stated that he wanted to present the drugs to the mayor to show him how easy it was to get them in south Waukegan. He admitted driving and parking improperly; however, he denied engaging in disorderly behavior or claiming to be God. Rather, defendant stated that he was sitting quietly in the waiting room outside the mayor's office when Hansen and Angelos, for no apparent reason, asked him to leave. He admitted telling Sergeant Angelos that he had marijuana and cocaine in his pockets.

The jury found defendant guilty of possession of both substances. At the sentencing hearing, Lieutenant Timothy Neimitz of the Waukegan police department testified that defendant had told him after his arrest for an unrelated incident in August 1982 that he had been selling drugs. Testifying in his own behalf, defendant admitted that he had previously used and sold drugs, but that he had stopped all drug-related activities in November 1985, and had turned his efforts toward trying to prevent drug abuse among the youth of south Waukegan. However, defendant testified that he purchased the drugs in question at locations on the north and northwest sides of town. Defendant was sentenced to three years' imprisonment, and this appeal followed.

■ ■ Defendant's first argument is that he did not possess the drugs with any culpable criminal intent, but was merely engaged in a

form of civic protest. Even if this were true, motive is not an element of the offense of possession of drugs. (*People v. Molsby* (1978), 66 Ill. App. 3d 647, 661, 383 N.E.2d 1336.) To establish guilt for possession of illegal drugs, the prosecution need only prove that the defendant knows of the drugs' presence and that the drugs were in defendant's immediate and exclusive control. (*People v. Birge* (1985), 137 Ill. App. 3d 781, 790, 485 N.E.2d 37.) In *Town of Normal v. Bowsky* (1986), 142 Ill. App. 3d 760, 492 N.E.2d 204, the court stated that one has possession of contraband when he has immediate and exclusive control of it and knows the nature of the substance. The defendant's reason for possession of the contraband is irrelevant, unless it would bring him within a statutory exception. *Town of Normal*, 142 Ill. App. 3d at 762.

■ In this case, Sergeant Angelos found the drugs in defendant's pants pockets, establishing defendant's immediate and exclusive control over them. Furthermore, defendant's testimony, as well as his statement to Angelos that he had grass and cocaine in his pockets, shows that he was aware of the nature of these substances. The State thus proved the two essential elements of the offense of possession of illegal drugs, and defendant's testimony as to his motive, even if believed, was irrelevant to his guilt of the offenses charged.

Defendant's argument that he was in possession of the illegal substances to expose the relative ease with which drugs could be purchased in south Waukegan, and his reliance on *Price v. People* (1884), 109 Ill. 109, and *Wilson v. People* (1939), 103 Colo. 441, 87 P.2d 5, to support this argument is misplaced. In those cases, the defendants had participated in burglaries in order to collect evidence against the perpetrators, but had informed the police of the burglaries in advance or immediately thereafter. In both cases, the court found that the defendants' conduct negated an essential element, an intention to steal, of the crime of burglary. (*Price*, 109 Ill. at 113; *Wilson*, 103 Colo. at 445, 87 P.2d at 6; see also *State v. Allison* (1987), 319 N.C. 92, 98, 352 S.E.2d 420, 423-24 (in prosecution of defendant-informant for attempted armed robbery, the State failed to prove that the defendant intended to unlawfully deprive individual of his personal property).) As noted above, the State proved the essential elements of the crimes charged; that defendant was allegedly acting, without cooperation with law enforcement personnel, as a crime fighter is irrelevant.

■ Defendant's second contention is that the trial court did not consider defendant's civic-minded purpose for possessing the drugs when sentencing him. He argues that the court attempted to retry

the case at the sentencing hearing rather than giving thorough consideration to the factors in aggravation and mitigation. This assertion is not supported by the record. In sentencing defendant, the court stated:

> "Well, first of all, it is now again argued to the Court that Mr. Davis' possession of marijuana and cocaine of which he has been convicted by a jury was for a benevolent purpose; that he was simply trying to highlight the problem of drugs on the south side. I believe all that has been argued at length to a jury in the jury trial which, obviously, has found contrarywise [sic]. And it was, indeed, pointed out by the prosecution in the jury trial and apparently not disputed by the defendant that some of the drugs in question came from the Bally Muck, which is on the north side and not on the south side at all and that it belied the defendant's position of the abundance of drugs on the south side which he was dramatizing. Again, I think all that has been argued repetitiously in front of a jury which has had an opportunity to consider the defendant's position, which, apparently, was rejected and which the Court agrees did not hold merit."

The trial court also listed the statutory factors in mitigation and noted which it felt were applicable and inapplicable. As to the fourth factor, that there was substantial ground tending to excuse or justify defendant's actions (see Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1(4)), the court stated:

> "The whole proposition about this conduct being done to dramatize his position simply is not borne out by the evidence. The drugs that he had on his person, at least in part, were not from the south side but were from the Bally Muck on the north side. And, in fact, the defendant did not simply, you know, present the drugs to the police or to the mayor or to anyone else in Waukegan; it was after he was arrested and there was a search of the defendant that the cocaine and the marijuana were uncovered. When he was taken into custody, indeed, there would obviously be a search, and I believe the testimony indicates that the defendant was cooperative in indicating where the drugs were after he was taken into custody. But I agree with [the prosecutor] at this point, it was obvious that he was going to be searched and that the drugs would be uncovered."

From these statements, defendant argues that "the court persisted in scrutinizing Davis' justification with a reasonable doubt analysis," and, instead of focusing on factors in aggravation and mitigation of sentence, "went about redetermining the defendant's guilt."

The trial judge's remarks indicate only that he disbelieved defendant's story and, thus, did not consider it as a factor in mitigation. Such assessments were inherent in his duties as sentencing judge.

■■ ■ It is well established that the sentence to be imposed is a decision peculiarly within the province of the trial court, and its determination will not be reversed on appeal absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154-56, 368 N.E.2d 882.) The circumstances surrounding the defendant's arrest reveal a pattern of abusive behavior and disrespect for the law. In addition, defendant had a criminal record consisting of two convictions for unlawful use of weapons. In light of defendant's background and the facts of this case we cannot say that the trial court abused its discretion in sentencing him to three years in the Department of Corrections.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and REINHARD, JJ., concur.