THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DUANE G. DAVIS, Defendant-Appellant.

Second District   No. 2—86—0663

Opinion filed April 27, 1988.—Rehearing denied May 31, 1988.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Duane G. Davis, was charged by information with one count of theft, five counts of unlawful use of a weapon, and one count of reckless conduct. After a jury trial, he was found guilty on all counts. Judgment was entered only on the theft conviction, and defendant was sentenced to a term of three years in the Department of Corrections.

On appeal, defendant argues that he was not proved guilty of theft beyond a reasonable doubt, that the jury was improperly instructed, that the trial court abused its discretion in imposing the maximum sentence, and that he was denied his right of self-representation. Although we find that defendant was proved guilty beyond a reasonable doubt, we reverse because he was improperly denied his constitutional right to represent himself at trial.

Defendant was represented at trial by an assistant public defender. On the morning that trial was scheduled to begin, however, defendant filed a written motion for self-representation and informed the court that he wished to discharge counsel and proceed *pro se*. The request was denied, and the case went to trial.

Defendant testified, as he had in a prior trial on different charges (see *People v. Davis* (1988), 165 Ill. App. 3d 648), that he is president of a community group called the Self Help Organization for the Redevelopment and Reeducation of the Young (SHORTY), which opposes guns, drugs and stealing. On the morning of March 3, 1986, defendant was seen walking down the middle of County Street in Waukegan carrying a shotgun over his shoulder. Witnesses saw him fire the shotgun into the air several times. Police soon arrived, and defendant dropped the shotgun and put his hands on his head. Defendant apparently did not resist arrest, but he was also found to be carrying a .25 caliber automatic pistol and a .32 caliber pistol. A witness at trial identified the .25 caliber pistol as one that had been stolen from his place of business in Kenosha, Wisconsin, on March 16, 1985. A police

officer who took defendant's statement after arrest testified that defendant told him the .25 caliber pistol was stolen and that defendant had traded drugs for it. Defendant also told the officer that a .308 Remington rifle he had turned in to the police the day before was also stolen and that he had traded drugs for that gun as well.

Defendant explained at trial that he was taking the guns to the police station to turn them in on behalf of SHORTY. He also testified that on March 2, 1986, the day before he was arrested, he had tried to turn in the .25 and .32 caliber pistols, the shotgun, and the Remington rifle by taking them to the police station in the trunk of his car. When he brought the rifle into the station, however, the police started to arrest him, but when defendant said that his young children were in the car, he was allowed to leave.

Defendant testified that since his first attempt to turn in the guns was unsuccessful, he decided to try again the next day in a different way. He stated that by walking to the police station with the guns and by firing off the shotgun, he could dramatize the goals of SHORTY. He admitted trading drugs for the .25 caliber pistol in June 1985 but testified that he did so to show the power of drugs as money. He testified that he did not know the pistol was stolen until he was told so by the police.

■ We consider first whether defendant was proved guilty beyond a reasonable doubt of theft of the .25 caliber pistol. The State, of course, is required to prove each of the essential elements necessary to constitute the crime charged. (*People v. Falkner* (1978), 61 Ill. App. 3d 84, 86.) The statute under which defendant was charged defines "theft" as follows:

"A person commits theft when he knowingly:

\* \* \*

(d) Obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property \*\*\*." (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d)(1).)

Although defendant admits that the circumstances under which he acquired the gun reasonably suggested that the gun was stolen, he argues that he did not have the requisite intent to permanently deprive the owner of the use of the gun since he was attempting to turn the gun in to the police at the time he was arrested.

■ Even if we were to accept defendant's contention that he in-

tended to turn the gun in the day he was arrested, or even the day before, we would not thereby be compelled to conclude that defendant was not guilty of theft. It is true that proof of the existence of a state of mind incompatible with an intent to permanently deprive the owner of use precludes a finding of theft. (*Falkner*, 61 Ill. App. 3d at 90.) Here, however, defendant retained the gun for over 10 months before allegedly attempting to turn it in to the police. Given these circumstances, the jury could reasonably have concluded that defendant intended to permanently deprive the owner of use of the gun when he first obtained it, only to change his mind about keeping it almost a year later. Such a belated attempt to return stolen property in no way removes the original criminal intention. (*People v. Reans* (1974), 20 Ill. App. 3d 1005, 1008.) The cases on which defendant relies do not call for a different result, because in those cases it was not proved that the defendants *ever* possessed criminal intent. (See, *e.g.*, *Falkner*, 61 Ill. App. 3d at 89; *People v. Cortez* (1975), 26 Ill. App. 3d 829, 834.) A jury's verdict on the issue of criminal intent will not be disturbed on review unless the supporting evidence is improbable, unconvincing or contrary to human experience. (*People v. Robinson* (1986), 147 Ill. App. 3d 131, 133.) Under this standard, we find that defendant was proved guilty of theft beyond a reasonable doubt.

■ We turn now to the denial of defendant's request to represent himself at trial. It should be well settled by now that a criminal defendant has the constitutional right to defend himself in the appropriate circumstances. As our supreme court stated in *People v. Silagy* (1984), 101 Ill. 2d 147:

> "It is clear that the sixth amendment of the Constitution of the United States (U.S. Const., amend. VI) provides for the right of self-representation in criminal proceedings. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525; see also, Ill. Const. 1970, art. I, §8.) The ' "right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel." ' (*People v. Nelson* (1971), 47 Ill. 2d 570, 574; *People v. Bush* (1965), 32 Ill. 2d 484, 487.) The Supreme Court, in *Faretta*, noted the 'nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.' (422 U.S. 806, 817, 45 L. Ed. 2d 562, 572, 95 S. Ct. 2525, 2532.) Although a court may consider his decision unwise, if it is freely, knowingly and intelligently made, that decision must be accepted out of 'that re-

spect for the individual which is the lifeblood of the law.' *Illinois v. Allen* (1970), 397 U.S. 337, 350-51, 25 L. Ed. 2d 353, 363, 90 S. Ct. 1057, 1064 (Brennan, J., concurring)." (*Silagy*, 101 Ill. 2d at 179-80.)

"Thus, a defendant may competently waive counsel if such an election is voluntary and constitutes 'a knowing and intelligent relinquishment or abandonment of a known right or privilege.' " *People v. Baker* (1982), 92 Ill. 2d 85, 91, quoting *Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1883.

In this case, defendant clearly set forth, both orally and in writing, his desire to proceed *pro se*, as well as his full appreciation of the consequences of his decision. In response to defendant's motion for self-representation, the trial court asked whether defendant had discussed his case with the public defender. When defendant replied that he had conflicts with his counsel over trial strategy and over which witnesses to call, the trial court summarily denied defendant's motion. We believe this was error.

In ruling on a motion for self-representation, the trial court must determine whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to counsel. The criteria generally considered in making that decision include the defendant's age, level of education, mental capacity and prior involvement, if any, in legal proceedings. (*People v. Kessler* (1983), 113 Ill. App. 3d 354, 359.) The State contends here that, based on the above criteria and circumstances known to the trial court, the court realized that defendant did not have the requisite capacity to waive his right to counsel.

We do not find support for this contention in the record. To begin with, the trial court never made a finding that defendant did not have the capacity to make an intelligent and knowing waiver of counsel, and we will not assume that he implicitly did so in denying defendant's request. Although the court did have a probation report from defendant's earlier trial which refers to defendant's "immaturity and narcissistic self-centered perception of events," the report stated that defendant "displays no psychotic disorders" and concluded that "defendant understood the crimes he is accused of committing and the consequences involved." While defendant did send several letters to the trial court from jail, the letters mainly express defendant's dissatisfaction with his treatment and do not, in and of themselves, lead to the conclusion that defendant lacked the capacity to knowingly waive counsel.

Other considerations lead us to believe that defendant pos-

sessed the requisite capacity to proceed *pro se.* He was 26 years old and had completed the 11th grade; his motion for self-representation was concise and contained relevant citations; and he initiated the incorporation of SHORTY. Most compelling, however, was defendant's familiarity with the criminal justice system. (*Kessler,* 113 Ill. App. 3d at 363.) While he did not have an extensive criminal record, he had recently been convicted of possession of a controlled substance and possession of cannabis in a case closely tied to this one. (See *People v. Davis* (1988), 165 Ill. App. 3d 648.) In that case, he had also been represented by the public defender, to his apparent dissatisfaction. Thus, defendant's desire to represent himself was not based on an uninformed whim, but on recent similar experience.

We recognize that in *Faretta* the defendant made his request for self-representation well before trial (*Faretta v. California* (1975), 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566, 95 S. Ct. 2525, 2527), while defendant here did not unequivocally do so until the day of trial. Nevertheless, defendant here specifically stated that he did not wish to delay proceedings, and there is no indication that the trial court considered this factor as determinative. In these circumstances, we do not find the timing of defendant's request a sufficient reason to deny him the constitutional right of self-representation.

Our holding above makes it unnecessary to consider the propriety of defendant's sentence. We also believe that any discrepancy between the theft charge and the jury instruction will not recur since the State concedes that defendant's proposed instruction more precisely conforms to the charge.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.