2019 IL App (1st) 181185-U

No. 1-18-1185

Third Division
December 31, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 14 CR 1739 |
| v. | ) ) | Honorable |
| LINO J. MENCONI, | ) ) | Joseph G. Kazmierski and Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*: The trial court properly denied defendant's motion to dismiss the indictment where the indictment did not violate the statute of limitations. Defendant's other challenges to conduct at trial cannot be addressed where defendant failed to provide an adequate record on appeal.

¶ 2    Following a jury trial, defendant Lino J. Menconi was convicted of theft of over $100,000 and sentenced to eight years in prison. On appeal, defendant argues that the trial court erroneously denied his pretrial motion to dismiss the indictment for a violation of the statute of limitations. He also contends, in the alternative, that (1) the trial court erred by barring him

from arguing that he had reached a civil settlement with the aggrieved parties, (2) the State failed to prove at trial that an extended statute of limitations applied, (3) the State violated the court's ruling on a motion *in limine* by eliciting testimony that he had violated the Illinois Rules of Professional Conduct for attorneys and was being punished by the Attorney Registration and Disciplinary Commission, and (4) the State failed to prove that he permanently deprived the aggrieved parties of the stolen funds. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4                                     A. The Charges

¶ 5         On January 16, 2014, defendant was indicted on, *inter alia*, four counts of theft based on his alleged mishandling of more than $100,000 of annuity payments belonging to Lino W. Menconi (Lino), defendant's uncle who had granted defendant power of attorney over his financial affairs.[1] Relevant here, count II of the indictment alleged that defendant exerted unauthorized control over the annuity funds and used, concealed, or abandoned them while knowing that he would "probably" permanently deprive Lino and Lino's successors of the funds. 720 ILCS 5/16-1(a)(1)(C) (West 2010). Similarly, count IV alleged that defendant obtained control of the funds through deceptive means and used, concealed, or abandoned them while knowing that he would "probably" permanently deprive Lino and Lino's successors of the funds. 720 ILCS 5/16-1(a)(2)(C) (West 2010). Each of the charges also alleged that, pursuant to section 3-6(a)(2) of the Criminal Code of 1992 (Code), the statute of limitations was extended because (1) the charges involved a breach of fiduciary duty and (2) the proper prosecuting authority did not become aware of the offenses until June 20, 2013. See 720 ILCS

---

[1]Defendant was acquitted of the indictment's remaining counts related to fraud against a financial institution, and we omit discussion of the evidence and procedural history that pertains solely to those charges.

5/3-6(a)(2) (West 2010). The indictment further alleged that the charges were based on a "series of acts" that culminated on January 8, 2011, thereby triggering section 3-8 of the Code, which provides that the limitations period does not begin to run until the last criminal act in a series is committed. See 720 ILCS 5/3-8 (West 2010).

¶ 6     According to a factual proffer filed by the State, defendant prepared in 2009 a durable power of attorney, a health care power of attorney, a will, and a living trust for Lino, who was then 71 years old and residing in a nursing home. The durable power of attorney granted defendant broad authority over Lino's finances, including, among various other things, the power "to expend [Lino's] assets for the reasonable health, maintenance, support and education of [Lino's] children." In March 2010, defendant converted an annuity owned by Lino from one that paid a benefit upon death to one that made regular payments during Lino's lifetime. By September 2010, defendant had received four annuity checks totaling approximately $174,000, all of which he deposited into his own business account. Defendant then spent approximately $52,000 of these funds on Lino's care, but did not distribute the balance to Lino's estate after Lino's death in August 2010. Instead, defendant used the remaining funds for his own personal and business expenses such as his employee's wages, his country club membership, his children's tuition, and his tax obligations. The account in which defendant deposited Lino's annuity checks was completely depleted on January 18, 2011.

¶ 7                                          B. Pre-Trial Proceedings

¶ 8     In February 2014, defendant, through counsel,[2] moved to dismiss the indictment on the basis that, in violation of section 3-5(a) of the Code (720 ILCS 5/3-5(a) (West 2010)), it was

_____

[2] Defendant subsequently elected to proceed *pro se* in August 2014, a status he retained throughout his trial and this appeal. During the trial court's required admonishments, defendant represented that he was a

brought more than three years after the theft was allegedly committed. Defendant acknowledged that the State alleged an extended statute of limitations, but argued that (1) section 3-6(a)(2) of the Code was inapplicable because Lino's heirs knew of the alleged theft more than a year before the indictment, and (2) the "final act" for purposes of section 3-8 of the Code was the deposit of the last annuity check into defendant's account in September 2010, not the depletion of the account in January 2011.

¶ 9        In response, the State contended that the indictment was timely filed under section 3-6(a)(2) within one year of the state's attorney learning of the theft on June 20, 2013. Alternatively, the State maintained that, because the power of attorney authorized defendant to deposit the annuity funds into his account, he did not commit his final act of theft until he spent the funds on personal expenses for the last time in January 2011.

¶ 10        On December 29, 2014, the court heard arguments on defendant's motion to dismiss, but took the matter under advisement and reserved ruling. On February 5, 2015, the court reconvened and instructed the parties to submit additional briefing on the impact of *People v. Chenoweth*, 2015 IL 116898, which was decided by the Illinois Supreme Court in January 2015.

¶ 11        In defendant's supplemental memorandum, he contended that *Chenoweth* "applie[d] to a very narrow set of circumstances" not present in the instant case because, unlike the victim in *Chenoweth*, Lino's heirs were not elderly and were represented by counsel in a civil matter prior to the state's attorney learning of the theft. Consequently, defendant maintained that the

---

lawyer, but not currently licensed to practice law in Illinois. According to the State's proffer, defendant's law license was suspended in 2013 based in part on the charges in the present case.

period of limitations had expired by January 2014 because that date was more than one year after Lino's heirs discovered the theft within the meaning of section 3-6(a)(2).

¶ 12　　In response, the State argued that *Chenoweth* drew a key distinction between the "discovery" of an offense for purposes of section 3-6(a)(2) and the awareness of a loss or the mere suspicion that a crime occurred. Thus, according to the State, Lino's heirs did not "discover" the theft even if they suspected that defendant committed a crime or knew that he breached his civil duty of care in handling the missing funds. Instead, the State maintained that section 3-6(a)(2) was not triggered until the state's attorney learned of the theft on June 20, 2013, and that the January 2014 indictment was therefore timely.

¶ 13　　The court denied defendant's motion to dismiss after a hearing on June 4, 2015, stating that it found *Chenoweth* controlling on the issue of when the statute of limitations began to run.

¶ 14　　On March 24, 2016, defendant moved for reconsideration, arguing that the trial court's ruling was "ambiguous, erroneous, and contrary to the undisputed facts in the case." In particular, defendant reiterated his contention that section 3-6(a)(2) was triggered before the state's attorney's involvement because Lino's heirs filed a detailed police report regarding the missing annuity funds and executed written settlement agreements regarding defendant's management of Lino's estate with the assistance of experienced counsel. After numerous continuances, the court reconvened on September 14, 2017 and denied defendant's motion to reconsider, noting that it was "essentially the same motion that was made before."

¶ 15　　　　　　　　　　　　　　C. Trial and Sentencing

¶ 16　　The case proceeded to a jury trial beginning on January 31, 2018. The docket indicates that proceedings were held on January 31, February 1, February 2, and February 5, but the record on appeal contains a transcript for only February 5. On that date, the parties presented their

closing arguments, the court instructed the jury, and the jury found defendant guilty on counts II and IV. Following a hearing on April 3, 2018, the court merged the counts and sentenced defendant to eight years in prison. The court subsequently denied defendant's motion to reconsider the sentence on May 16, 2018. No transcripts from either date appear in the record.

¶ 17                                                  II. ANALYSIS

¶ 18          On appeal, defendant raises several arguments as to why the indictment violated the statute of limitations. First, he contends that the period of limitations should not have been extended under section 3-6(a)(2) of the Code because Lino's heirs discovered the theft more than one year before the indictment. Second, defendant contends that section 3-8 of the Code is inapplicable because theft is not a continuing offense comprised of a "series of acts." Alternatively, defendant also argues that (1) the trial court erred by refusing to allow him to argue that he had reached a final settlement with Lino's heirs regarding the annuity funds, (2) the State did not prove the application of either section 3-6(a)(2) or section 3-8 at trial, (3) the State violated the trial court's ruling on a motion *in limine* barring evidence that defendant had violated the Illinois Rules of Professional Conduct for attorneys or had been punished by the Attorney Registration and Disciplinary Commission, and (4) the State did not prove that Lino's heirs were permanently deprived of the stolen funds.

¶ 19                                         A. Statute of Limitations

¶ 20          Defendant's arguments require us to interpret the statutory language of the Code, which is a question of law we review *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12; *People v. Zimmerman*, 239 Ill. 2d 491, 497, 347 (2010). The goal of statutory construction is to ascertain the legislature's intent, the best indicator of which is the plain and ordinary meaning of the statutory language. *People v. Howard*, 233 Ill. 2d 213, 218 (2009). Where the language of a

statute is clear and unambiguous, we must give effect to it without resorting to further aids of construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Although ambiguous penal statues should generally be constructed in favor of leniency towards the accused, this rule does not require us to adopt a construction contrary to the purpose of the statute or the legislature's clear intent. *In re B. C.*, 176 Ill. 2d 536, 551 (1997); *People v. Kelly*, 344 Ill. App. 3d 1058, 1063 (2003).

¶ 21                                     1. "Discovery" of the Offenses

¶ 22        Section 3-5(b) of the Code provides that a felony indictment must generally be brought within three years of the offense. 720 ILCS 5/3-5(b) (West 2010). However, this general limitations period may be extended in certain circumstances. See 720 ILCS 5/3-6 (West 2010). Relevant here, section 3-6(a)(2) provides that, in cases of theft involving a breach of the defendant's fiduciary obligations, the prosecution must be commenced:

> "within one year after the discovery of the offense by an aggrieved person, or by a person who has legal capacity to represent an aggrieved person or has a legal duty to report the offense, and is not himself or herself a party to the offense; or in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense." 720 ILCS 5/3-6(a)(2) (West 2010).

¶ 23        Defendant contends that the one-year limitations period of section 3-6(a)(2) was triggered on either (1) February 7, 2012, when Lino's son contacted the police about the missing funds, or (2) January 10, 2013, when defendant and Lino's heirs entered into a civil settlement regarding the funds. The State, on the other hand, maintains that the theft was not discovered within the meaning of section 3-6(a)(2) until the police submitted the investigatory file to the state's attorney on June 20, 2013.

¶ 24     Our supreme court examined when an offense is deemed "discovered" for purposes of section 3-6(a)(2) in *Chenoweth*. There, the defendant was charged with financially exploiting her elderly stepmother, who had granted the defendant property power of attorney. *Chenoweth*, 2015 IL 116898, ¶ 3. The defendant sold the victim's house in March 2005. *Id.* In September 2008, the victim granted property power of attorney to a non-profit agency, which discovered that proceeds from the sale of the house were missing. *Id.* The agency contacted the police, who, in December 2008, identified several suspicious expenditures in the defendant's bank records. *Id.* Officers then interviewed the victim and learned that she had not given the defendant permission to spend the money for those purposes. *Id.* ¶¶ 7-8.

¶ 25     The State filed a three-count indictment against defendant on December 21, 2009, alleging that the offenses occurred between December 2004 and July 2005. *Id.* ¶ 13. The State subsequently obtained the trial court's permission to file an information alleging that the period of limitations was extended under section 3-6(a)(2) because the defendant was indicted within one year of January 22, 2009, when the state's attorney received the investigative file from the police and became aware of the offenses. *Id.* ¶ 14. The defendant moved to dismiss the information as untimely. *Id.* ¶ 15. The trial court denied the motion, and, after a bench trial, found defendant guilty of financial exploitation of an elderly person. *Id.* ¶ 15.

¶ 26     On appeal, a majority of a panel of this court held that the victim discovered the offenses within the meaning of section 3-6(a)(2) on December 5, 2008, the day she learned from the police that the defendant had written unauthorized checks from her account. *Id.* ¶ 25.

¶ 27     Our supreme court disagreed, stating that the clear and unambiguous meaning of the phrase "discovery of the offense" as used in section 3-6(a)(2) was "gaining knowledge or finding out that a criminal statute has been violated." *Id.* ¶ 27. The court therefore found the defendant's

position to be flawed because it falsely equated the victim's knowledge of missing money and mere suspicion of criminal activity with knowledge that a penal statue had been violated. *Id. ¶ 28.* The court also stated that, because the defendant held unrestricted property power of attorney, the fact that the defendant made unauthorized expenditures did not automatically mean that she had committed misappropriation. *Id. ¶ 28.* Thus, although the victim might have known the defendant violated the civil duty of care after speaking to police, the victim did not know that a crime had been committed. *Id. ¶ 34.* Accordingly, the court concluded that the one-year limitations period set forth in section 3-6(a)(2) did not begin to run until the police submitted their investigative file to the state's attorney on January 22, 2009. *Id. ¶ 36.* The indictment, which was filed on December 21, 2009, was therefore timely. *Id.*

¶ 28    Here, as in *Chenoweth*, the power of attorney granted defendant significant control over Lino's finances, including the ability to spend the annuity funds for certain purposes. Thus, we cannot say that Lino's heirs had knowledge of criminal activity when they reported missing funds to the police. Nor can we say that the heirs were aware of a criminal violation by virtue of their civil settlement with defendant. Although defendant suggests that Lino's heirs were represented in the civil matter by an experienced attorney with some background in criminal law, nothing in the record demonstrates that either the heirs or their attorney had knowledge of a crime. Instead, in line with *Chenoweth*, we find that defendant's criminal activity was not discovered for statute of limitations purposes until the state's attorney received the investigative file from the police on June 20, 2013. Consequently, the January 2014 indictment was timely filed, and the trial court properly denied defendant's motion to dismiss.

¶ 29                                2. "Series of Acts"

¶ 30       Although the trial court stated that it denied defendant's motion to dismiss in light of *Chenoweth*, which involves only section 3-6(a)(2) of the Code, defendant contends that the court also based its ruling on an erroneous interpretation of section 3-8. Specifically, defendant maintains that section 3-8, which applies only "[w]hen an offense is based on a series of acts performed at different times," has no bearing on this case because his theft was a singular act that was complete when he deposited the last annuity check more than three years before the indictment. See 720 ILCS 5/3-8 (West 2010). However, as we have determined that the indictment was timely filed under section 3-6 of the Code, and may affirm the trial court's judgment on any basis, regardless of the court's actual reasoning (*People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 69), we need not consider whether section 3-8 applies in this case.

¶ 31                                     B. Incomplete Record

¶ 32       Defendants next raises several challenges to the sufficiency of the evidence, the trial court's rulings, and the State's arguments at trial. However, as noted, defendant has failed to provide a report of proceedings or an acceptable substitute for any of the trial, except for closing arguments. Given the inadequacy of the record, it is impossible for us to review defendant's remaining claims.

¶ 33       It is well-settled that the appellant bears the burden of providing a record on appeal that is sufficient to support his claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Without such a record, a reviewing court must presume that the trial court's order was in conformity with the law and supported by a proper factual basis. *People v. Banks*, 378 Ill. App. 3d 856, 861 (2007). This rule is relaxed, however, if (1) the missing record is material to a meaningful appeal, and (2) the appellant is not at fault for the incompleteness of the record. *People v. Sims*, 403 Ill. App. 3d 9, 15 (2010). Here, there is no dispute that the missing trial transcripts are

material to the appeal because they are necessary to evaluate defendant's claims. Thus, we must decide whether defendant can show that he is not at fault for the inadequate record.

¶ 34       Defendant contends that he made "diligent and complete attempts to supplement the record on appeal," and that the inadequacies in the record are attributable to the Clerk of the Court rather than himself. In particular, defendant asserts that he filed a motion to supplement the record on appeal to include the "official Report of Compliance subparts AAA, BBB, II, JJ, and VV," and that the missing transcripts included in the Report of Compliance were forwarded, in their entirety, to the Clerk of the Appellate Court. However, according to the Clerk of the Appellate Court's records, a supplemental record was never received with defendant's motion.

¶ 35       Due to the absence of a proposed supplemental record, the court denied defendant's motion to supplement the record. The typewritten order, dated January 22, 2019, stated, "IT IS HEREBY ORDERED THAT: Defendant-Appellant's Motion to Supplement the Record is GRANTED/DENIED. The Clerk of the Circuit Court of Cook County is directed to prepare a certified supplemental record consisting of Report of Compliance subparts AAA, BBB, II, JJ, and VV." The order contains annotations striking out the word "GRANTED" and circling the word "DENIED." The order also contains a handwritten annotation under the typewritten text reading, "have until Feb. 21 2019 to properly file record in our court[.]"

¶ 36       The State contends that this order gave defendant until February 21, 2019 to file the trial transcripts as a supplemental record. Defendant, citing Illinois Supreme Court Rule 329 (eff. July 1, 2017), maintains that the order "plainly direct[ed] the Clerk of the Circuit Court to prepare and file a certified supplemental record."

¶ 37       Under either interpretation, we disagree with defendant's assertion that all fault lies with the Clerk of the Circuit Court. Even assuming that the January 22 order was not directed at

defendant, we note that defendant did not make any attempts to supplement the record or seek any further recourse on the matter either before or after the February 21 deadline. Defendant did, however, file motions (1) seeking to proceed on only the appellant's brief, (2) objecting to the State's motion for extension of time, (3) seeking to accelerate the appeal, and (4) requesting release on bond pending appeal. Defendant also filed a reply brief. Under these circumstances, we find that defendant had ample time and opportunity to follow up with both the Clerk of the Appellate Court and the Clerk of the Circuit Court to ensure that a complete record was presented on appeal for this court's review.

¶ 38    Although defendant also observes that he was incarcerated, indigent, and proceeding *pro se* during the pendency of his appeal, we note that this status did not hinder his ability to file the numerous motions mentioned. Regardless, the responsibility of providing the record for the appellate court's review remains firmly with the defendant. *Banks*, 378 Ill. App. 3d at 862.

¶ 39    In sum, defendant has not demonstrated that he is faultless, or that the circumstances leading to the incomplete record on appeal were beyond his control. Accordingly, we do not relax his burden of presenting a complete record for our review. As the record is insufficient to review defendant's challenges to the sufficiency of the evidence at trial, the court and prosecutor's conduct during the trial, and the alleged prejudice stemming from violations of motions *in limine* affecting the jury's verdict, we presume that the trial court acted in conformity with the law and affirm his conviction.

¶ 40                                B. Permanent Deprivation

¶ 41    As a final matter, we address defendant's contention that he did not permanently deprive Lino's heirs of the stolen annuity funds because he and the heirs entered into a civil settlement regarding the funds before the indictment. In his initial brief on appeal, defendant characterized

this argument as a claim that the trial court erred by failing to dismiss the indictment "as a matter of law" based on the State's inability to satisfy an element of the charged offenses. In his reply brief, however, defendant characterizes the issue as requiring reversal because the State "did not establish the element at trial[.]"

¶ 42    Initially, we note that, contrary to what defendant seems to suggest on appeal, the State was not required to prove that he actually permanently deprived Lino's heirs of the stolen annuity funds. Instead, as charged here, the State was required to prove that defendant used, concealed, or abandoned the funds with knowledge that such use, concealment, or abandonment would *probably* permanently deprive the heirs of the funds. 720 ILCS 5/16-1(a)(1)(C), (a)(2)(C) (West 2010).

¶ 43    To the extent defendant argues that the State failed to prove this element at trial, we reject this argument because, as we have explained, defendant has failed to provide a transcript of the trial proceedings for our review. To the extent defendant claims the indictment should have been dismissed as a matter of law, we find that the fact of the settlement did not negate defendant's criminal intent. Permanent deprivation is defined by statute as, among other things, selling, giving, pledging, or otherwise transferring any interest in the property or subjecting it to the claim of a person other than the owner. 720 ILCS 5/15-3(d) (West 2010). By spending the annuity funds for personal purposes, defendant subjected the funds to claims by persons other than Lino's heirs. The fact the defendant later paid back the funds, through a settlement agreement or other means, does not relieve him of criminal responsibility. See *People v. Curoe*, 97 Ill. App. 3d 258, 274 (1981) (the defendant, who embezzled funds from a decedent's estate, gave the aggrieved heirs promissory notes after they discovered that funds were missing from the estate's checking account); see also *People v. Davis*, 169 Ill. App. 3d 1, 4-5 (1988) ("Such

a belated attempt to return stolen property in no way removes the original criminal intention.")
(citing *People v. Reans*, 20 Ill. App. 3d 1005, 1008 (1974)). Accordingly, we reject defendant's
argument regarding the element of permanent deprivation.

¶ 44                                    III. CONCLUSION

¶ 45        For the reasons stated, we affirm the circuit court's judgment.

¶ 46        Affirmed.