NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240043-U

NO. 4-24-0043

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| MICHAEL WISNER, | ) | No. 22CF457 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court (1) substantially complied
with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) and (2) did not exhibit
judicial bias or consider an improper factor at sentencing.

¶ 2    Following an October 2023 bench trial, the trial court found defendant, Michael

Wisner, guilty of home invasion (720 ILCS 5/19-6(a)(1) (West 2022)), criminal trespass to

residence (*id.* § 19-4(a)(2)), and violation of an order of protection (*id.* § 12-3.4(a)(1)). The court

sentenced defendant to 26 years in prison. Defendant appeals, arguing the court (1) did not

comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), and thus, his waiver of his

right to counsel was ineffective and (2) exhibited judicial bias toward him and considered an

improper factor at sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In July 2022, a grand jury indicted defendant with home invasion (720 ILCS 5/19-6(a)(1) (West 2022)), criminal trespass to residence (*id.* § 19-4(a)(2)), and violation of an order of protection (*id.* § 12-3.4(a)(1)). The indictment alleged, on or about June 22, 2022, defendant, knowingly and without authority, entered the home of Mary Wenzel while armed with a knife and threatened the imminent use of force. At the time of the offense, Wenzel had an order of protection entered against defendant.

¶ 5            At a March 2, 2023, scheduling conference, defendant expressed he no longer wanted to be represented by his private attorney. The trial court set a new hearing date to admonish defendant pursuant to Rule 401(a). At the end of the scheduling conference, defendant tried discussing his case in open court. Defense counsel responded:

            "MR. DOUBET [(DEFENSE COUNSEL)]: You don't want to talk about your case in front of—

            THE COURT: All right. You surrendered to the homeowner. You just admitted to being there, and I've got one, two prosecutors—

            [DEFENDANT]: I ain't worried about it. That don't matter to me.

            THE COURT: Now, you guys are all wondering, is it okay to interrupt a judge? No is the answer to that. Although, I might tell from your physical reaction I'm bothering you. All right. All done. Get rid of him, and I only mean remove him from the courtroom.

            (End of proceedings.)"

¶ 6            The trial court held the admonishment hearing on March 6, 2023. The court admonished defendant at length regarding his right to counsel, the nature of the charges against

him, and the sentencing possibilities. The court asked defendant about his age, education, mental and physical health, and prescription medications. Defendant responded his mental health was "stable" and he was prescribed Seroquel. The court asked defense counsel, "[S]ounds to me like [defendant] understands things?" Defense counsel answered, "[Defendant] has always comprehended when we have had conversations." The court asked defendant if he was under the influence of drugs or alcohol. Defendant responded he was under the influence of Seroquel, but it did not negatively affect his ability to understand the proceedings.

¶ 7        The trial court further admonished defendant as to the role defense counsel would play in the proceedings and warned defendant he would be solely responsible for handling his entire case. After the admonishments, defendant again verbally expressed his desire to waive his right to counsel. The court accepted defendant's waiver and noted it was "knowingly, voluntarily, and understandingly made."

¶ 8        Defendant proceeded to represent himself at the October 2023 bench trial. The trial court found defendant guilty on all counts. Following its ruling, the court asked defendant:

> "THE COURT: Any questions, [defendant]?
>
> [DEFENDANT]: Still don't understand how—the knife does not have my fingerprints. How are you going to say I have a weapon that does not have my fingerprints?
>
> THE COURT: You misinterpreted my question as to did you—
>
> [DEFENDANT]: Well, I mean—okay. Well, my question is—
>
> THE COURT: He's out. Get him out. I'm not going to be interrupted.
>
> [DEFENDANT]: I will be appealing this.
>
> THE COURT: Oh, no, no sleep for me tonight.

[DEFENDANT]: What—

MS. MCCAVITT [(ASSISTANT STATE'S ATTORNEY)]: Your Honor, at this time I ask that his bond be revoked.

THE COURT: You are rude—you're a rude little person? You think I have to sit here and take it? You're wrong.

[DEFENDANT]: Rude?

THE COURT: Says the sentencing judge.

[DEFENDANT]: Rude, I'm not being rude.

THE COURT: See ya.

[DEFENDANT]: Man."

¶ 9    Defendant was removed from the courtroom and the sentencing date was set in his absence. The trial court then brought defendant back into the courtroom:

"THE COURT: All right.

I'm considering have [*sic*] the defendant brought back out right now. I don't like being interrupted. Challenging my ruling is not a good thing to do either.

I'm having him brought back out. I don't know if anyone wants to leave. I'm certainly not changing my ruling. I just—maybe he deserved a little more chance to interrupt me—I mean, a chance to speak.

So [defendant] is back in the courtroom. You have a new court date of December 21st. That's for any post-trial motions. Depending on how those would go, possible sentencing. That will be December 21st, 2:30 in the afternoon. Understand?

- 4 -

[DEFENDANT]: Yes, Your Honor.

THE COURT: Do you have any questions?

[DEFENDANT]: No, Your Honor.

THE COURT: When I asked you if you had any questions [10] minutes ago, I meant about the process, about what I ruled. Do you have any questions about that; not, hey, why did you rule this way? And I'm not angrily saying this. I'm straightening this out. Did you have any questions other than, why did you do this? I mean, what did you mean when you said this, is a decent question, or, what happens next, is a decent question. Do you have any questions?

[DEFENDANT]: No, Your Honor.

THE COURT: All done then. Go wherever the deputies tell you."

¶ 10    In December 2023, the trial court held a sentencing hearing. The State presented evidence in aggravation through the testimony of Wenzel. Afterwards, the court asked defendant if he wished to present evidence in mitigation:

"THE COURT: [Defendant], any evidence?

[DEFENDANT]: I mean, am I allowed to call anyone to the stand because I have countless people right here that know that most of that story [Wenzel] just told are lies? First off, let's talk about the job she left at OSF [HealthCare] that was actually prior—she had already put in—

THE COURT: Let's not—

[DEFENDANT]: You want me to—what's my evidence you want me to use then? I mean, I can clearly show—

THE COURT: At a sentencing hearing you talk to me like that? Okay.

Fine with me.

[DEFENDANT]: Talk to you like that?

THE COURT: All done. Take him back."

¶ 11    Defendant was briefly removed from the courtroom before the trial court ordered to have him returned:

"THE COURT: Still on the record with [defendant]. [Defendant] is back in the courtroom. [Defendant], I'm running the show here. This is not a democracy in this courtroom. You do what I tell ya. That's just the way it is.

Now, for some reason, you're asking me how to do this when I told you a hundred times I'm not going to help you. And then the way you ask. Can I do this? Can I call these people here as witnesses? Yes. You can call them as witnesses, but I'm going to tell you this, the letter—well—there are a lot of things that the victim in this case said in that letter that—I'm not saying I don't believe her at all—that's got nothing to do with what I'm going to say—but are irrelevant for today's hearing. Don't think you got to shoot down everything she said.

I'm about to sentence you, and, if people want to get up here and say what a great guy you are, that's certainly relevant. And the State would be worse off if you were incarcerated than if you were not so I should incarcerate you for the smallest amount of time. The community would greatly benefit from you being out there. If they're going to say things like that, that's fine. Did you want to call witnesses?

[DEFENDANT]: Yes, Your Honor.

THE COURT: Who do you want to call?

[DEFENDANT]: Nobody. F*** it.

THE COURT: I'll tell you what, you just said f*** it, but I see that was a disappointment for you. All four of them shook their head no, right, [defendant]?

[DEFENDANT]: That's exactly what happened.

THE COURT: So I'm going to let that go. That was a pretty darn unpleasant surprise I would imagine. All right. They all said no. Did you want to put forth any evidence? You got argument. That's a whole different thing. Did you want to put forth any evidence?

[DEFENDANT]: Your Honor, the only reason I was upset in the first place is because I was trying to prove perjury. That's all I was doing. Clearly she just—

THE COURT: What? Did you want—is there any evidence you want to put forth? Listen to what the guy running the show is saying to you. Did you want to put forth any more evidence?

[DEFENDANT]: No, your Honor."

¶ 12     The State presented its argument and recommended a sentence at or near the maximum of 30 years. The trial court asked defendant if he wanted to put forth any argument. Defendant refused and told the court, "You can hit me with the max. I don't care. We can do 30 at 50 percent. I'll do 15. I'll come back on appeal so it don't matter." The court sentenced defendant to 26 years in the Illinois Department of Corrections.

¶ 13     This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, defendant argues (1) his waiver of his right to counsel was ineffective

where the trial court failed to substantially comply with Rule 401(a) and (2) the court exhibited judicial bias and considered an improper factor at sentencing.

¶ 16                                    A. Waiver of Counsel

¶ 17            Defendant argues his waiver of his right to counsel was ineffective because the trial court did not substantially comply with Rule 401(a). Initially, we note defendant's argument is not preserved for review as he did not make a contemporaneous objection or raise this issue in a written posttrial motion. *People v. Reese*, 2017 IL 120011, ¶ 60. He concedes he forfeited this issue but asks this court to review his claim under the plain error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 18            The plain error doctrine provides "a narrow and limited exception" to the general rule of forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To establish plain error, a defendant must first show a clear or obvious error occurred. *Reese*, 2017 IL 120011, ¶ 60. If there was clear or obvious error, the defendant must then show either (1) " 'the evidence [was] so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' " or (2) the " 'error [was] so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Id.* (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). Defendant asks us to review this claim for second-prong plain error. We first determine whether a clear or obvious error occurred. *Id.*

¶ 19            The sixth amendment of the United States Constitution guarantees a criminal defendant's right to both the assistance of counsel and to proceed without counsel. U.S. Const., amend. VI; *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). Rule 401(a) governs the procedure the trial court must follow when accepting a defendant's waiver of counsel. *Id.* Rule 401(a) provides:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 20　　　The purpose of the rule is to ensure the defendant's waiver is knowing and voluntary. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). However, "[s]trict compliance with Rule 401(a) is not always required." *People v. Stoops*, 313 Ill App. 3d 269, 274 (2000). Substantial compliance with the rule is sufficient where the waiver is knowing and voluntary and the trial court's admonishments did not prejudice the defendant's rights. *Id.* Whether the trial court failed to substantially comply with Rule 401(a) is a question of law we review *de novo* (*People v. Bahrs*, 2013 IL App (4th) 110903, ¶ 13), and whether the trial court's determination a waiver of counsel was effective is reviewed for an abuse of discretion (*People v. Baez*, 241 Ill. 2d 44, 116 (2011)).

¶ 21　　　Defendant does not argue the trial court failed to provide any of the admonishments as required under Rule 401(a). Rather, he maintains the court "did not take

seriously" its duty under the rule by simply reciting a "script" containing the required admonishments and, in doing so, failed to individually assess whether his waiver was effective.

¶ 22 In this case, when defendant first requested to represent himself, the trial court told him, "Okay. That's a bad idea. You don't need my approval though." The court explained the admonishment process to defendant and set a new hearing date. At the next hearing, the court read the admonishments to defendant from a four-page script, informing him of the nature of the charges against him, the sentencing possibilities, and his right to counsel. The court again advised defendant, "I recommend against you representing yourself. And I can recommend that until the cows come home. Still I finish reading these four things, you say I still want to represent myself, then that's the way it is regardless of my recommendation. I very much recommend against it."

¶ 23 The trial court then detailed what defense counsel's role would be in the proceedings and warned defendant he would not receive any assistance if he chose to represent himself. Throughout the admonishment hearing, after being asked many times by the court, defendant indicated he understood the admonishments. The court concluded by again advising defendant against representing himself. Before accepting defendant's waiver, the court asked defendant, "Do you have any questions about anything I have covered?" and "Is there anything I have covered that you don't understand?" Defendant answered he did not have any questions and still wished to represent himself.

¶ 24 On this record, we find the trial court substantially complied with its duty under Rule 401(a) to ensure defendant's effective waiver of counsel. The court repeatedly advised defendant against representing himself and admonished him at length regarding his right to counsel, the nature of the charges, and the sentencing possibilities. Throughout the hearing, the

court frequently paused to ask defendant whether he understood the admonishments. As to the court's use of a script, defendant fails to cite to any authority, and we are not aware of any, which prevents the court from utilizing a script when delivering admonishments to a criminal defendant. On the contrary, this practice promotes the court's compliance with our supreme court rules and helps to avoid unnecessary appeals. Cf. *People v. Whitney*, 2021 IL App (4th) 180517-U, ¶ 65 (encouraging trial courts to "simply read the language" of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) to avoid issues related to jury admonitions).

¶ 25 Despite these detailed admonishments, defendant argues the trial court did not adequately inquire into his mental health history, and thus it could not determine whether he had the requisite capacity to waive his right to counsel. This argument is contradicted by the record. At the admonishment hearing, the court specifically inquired into defendant's age, education, mental health status, prescription medications, and whether he was under the influence of drugs or alcohol. The court further solicited defense counsel's opinion as to defendant's ability to comprehend the proceedings. This inquiry was sufficient to allow the court to determine whether defendant understood the Rule 401(a) admonishments. *People v. Davis*, 169 Ill. App. 3d 1, 6 (1988). Notably, defendant does not explain how his mental health issues prevented him from understanding the court's admonishments or how further inquiry by the court would have changed the outcome of his waiver.

¶ 26 Thus, we conclude the trial court substantially complied with Rule 401(a) and defendant effectively waived his right to counsel. Defendant has not established clear or obvious error as required for the plain error doctrine to apply. Accordingly, reversal of his convictions on this ground is not warranted.

¶ 27                                    B. Sentencing

¶ 28          Defendant also contends the trial court exhibited judicial bias at sentencing and improperly considered his "rudeness" as an aggravating factor. He concedes he did not preserve this issue on appeal but asks this court to review his claim under either prong for plain error. *Hillier*, 237 Ill. 2d at 545. We first turn to whether a clear or obvious error occurred. *Id.*

¶ 29          "A sentencing hearing is fundamentally unfair when the proceeding is affected by judicial bias. [Citation.] Trial judges are presumed to be impartial, and the party claiming bias bears the burden of overcoming this presumption." *People v. Montgomery*, 2023 IL App (3d) 200389, ¶ 28. To prove judicial bias, the defendant must show the sentencing court exhibited "active personal animosity, hostility, ill will, or distrust toward the defendant." (Internal quotation marks omitted.) *People v. Fisher*, 2023 IL App (4th) 220717, ¶ 31. "The fact that a judge displays displeasure or irritation with [a defendant's] behavior is not necessarily evidence of judicial bias against the defendant." *People v. Urdiales*, 225 Ill. 2d 354, 426 (2007). We review *de novo* whether the trial court improperly exhibited judicial bias. *Fisher*, 2023 IL App (4th) 220717, ¶ 31.

¶ 30          Defendant points to three incidents as evidence of the trial court's alleged judicial bias: (1) the March 2023 scheduling conference, where the court removed defendant from the courtroom after he interrupted the judge, (2) the October 2023 bench trial, where the court removed defendant after he interrupted the judge and continued to argue with the judge before his removal, and (3) the December 2023 sentencing hearing, where the court removed defendant after he interrupted the judge.

¶ 31          "Allegations of judicial bias must be viewed in context and should be evaluated in terms of the trial judge's specific reaction to the events taking place." *People v. Jackson*, 205 Ill.

2d 247, 277 (2001). The trial court has wide latitude in the management of its courtroom, which includes the discretion to remove a defendant who engages in disruptive behavior. See *People v. Cummings*, 2023 IL App (1st) 220520, ¶ 54. In each of the discussed incidents, defendant was removed from the courtroom only after he interrupted or argued with the trial judge. Nothing in the court's statements demonstrate "active personal animosity, hostility, ill will, or distrust toward the defendant." (Internal quotation marks omitted.) See *Fisher*, 2023 IL App (4th) 220717, ¶ 31. Thus, in the context of the judge's specific reactions to the events taking place, none of these incidents, taken individually or as a whole, demonstrate judicial bias.

¶ 32 Finally, to the extent defendant asserts the trial court could not consider his "rudeness" as a factor at sentencing, we find this argument to be without merit. The sentencing court is tasked with balancing a multitude of factors, including the demeanor of the defendant. See *People v. Fern*, 189 Ill. 2d 48, 53 (1999) ("The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age."). The defendant's behavior in court is evidence of his demeanor, and therefore not merely appropriate, but required for the court to consider during sentencing. *Id.* Further, it is factors such as a defendant's behavior in court which are precisely why this court gives deference to a trial court's sentencing determination. See *id.* ("A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record."). Defendant has provided no authority to explain why the court could not consider defendant's demeanor in this case.

¶ 33 After reviewing the record, we conclude the trial court did not exhibit judicial bias

toward defendant or consider an improper factor at sentencing. Because we find no clear or obvious error, a plain error analysis is unnecessary. Accordingly, remand for a new sentencing hearing on these grounds is unwarranted.

¶ 34                                    III. CONCLUSION

¶ 35          For the reasons stated, we affirm the trial court's judgment.

¶ 36          Affirmed.